Courtney SMITH, Appellant
(Petitioner),

v.

CINCINNATI INSURANCE
COMPANY, Appellee
(Respondent).

No. 41S01–0212–CV–628.

Supreme Court of Indiana.

June 27, 2003.

Michael G. Getty, Rori Goldman, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorneys for Appellant.

Donald J. Tribbett, Scott L. Starr, Starr Austen Tribbett Myers & Miller, Logansport, IN, Attorneys for Appellee.

## CIVIL TRANSFER

RUCKER, Justice.

An underage driver crashed the car of her intoxicated friend while attempting to drive the friend home in the car purportedly with the friend's permission. The question we address is whether the level of intoxication has a bearing on the ability of an intoxicated would-be driver to give permission to another to operate her car. We hold that it does not.

### Facts and Procedural History

Eighteen-year-old Natalie Deem owned a car insured by the Cincinnati Insurance Company. While out late one evening with fifteen-year-old Courtney Smith, Deem became extremely intoxicated, sick, and wanted to go home. Smith claimed Deem gave her permission to drive Deem's car. Deem did not remember. In any event the record is clear that Smith possessed only a learner's permit and could lawfully drive only when accompanied by a guardian or relative who holds a valid operator's license. *See* Ind.Code § 9–24–7–4(2). It is undisputed that Deem had a valid operator's license, however Deem is not Smith's guardian and Deem and Smith are not related. Attempting to drive Deem home, Smith ran off the roadway, which was covered with snow and ice.

Both Smith and Deem were injured as a result.

Deem filed a complaint for damages against Smith. In turn, Smith filed a declaratory judgment action against Cincinnati Insurance to determine whether coverage existed. After a bench trial, the trial court determined that Smith was not covered under Deem's insurance policy. On direct review, the Court of Appeals affirmed. *See Smith v. Cincinnati Ins. Co.,* 769 N.E.2d 599, 604 (Ind.Ct.App. 2002). Having previously granted transfer, we affirm the judgment of the trial court.

### Discussion

■ The policy provision at issue in this case excludes coverage for any person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." Appellant's App. at 37. Entering judgment in favor of Cincinnati Insurance the trial court concluded, essentially on two grounds, that Smith could not reasonably have believed she had permission to drive Deem's car: (1) Smith was not legally entitled to drive; and (2) Deem was too intoxicated to give consent.

Affirming the trial court, the Court of Appeals focused on the policy language "entitled" and adopted a five part test to determine whether a driver has a reasonable belief that she is entitled to drive another person's car: (1) whether the driver has the express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was legally entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; and (5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe that she was entitled to

drive. *Smith,* 769 N.E.2d at 603 (citing *Omaha Prop. & Cas. Ins. Co. v. Peterson,* 865 S.W.2d 789, 791 (Mo.Ct.App.1993)). Noting that the trial court's findings of fact employed the foregoing criteria, the Court of Appeals agreed with the trial court's conclusion that "Smith's belief that she was entitled to drive Deem's car was not reasonable." *Id.* at 604. We agree with our colleagues.

However, although focusing on the "entitled" component of the trial court's findings of fact, the Court of Appeals seemed to have endorsed that portion of the trial court's finding which said "Smith knew Deem was extremely intoxicated when Deem purportedly gave this permission [to drive Deem's car]. Deem had been vomiting and passed out from extreme intoxication shortly before Deem purportedly gave Smith permission to drive[.] [A] reasonable person who had these facts would not have believed Deem was in a condition to give permission." *Id.* It is this portion of the opinion with which we take issue.

This jurisdiction has long recognized the toll that drunk driving has taken on the general public and the state's interest in preventing accidents caused by drivers who are intoxicated. *See, e.g., State v. Gerschoffer,* 763 N.E.2d 960, 968 (Ind.2002) (observing there is a "public danger of impaired driving" and a "legitimate law enforcement purpose of combating drunk driving"); *Ruge v. Kovach,* 467 N.E.2d 673, 681 (Ind.1984) (noting "Indiana's interest in keeping its highways safe by removing drunken drivers from its roads"); *Stroud v. Lints,* 760 N.E.2d 1176, 1187 (Ind.Ct.App.2002) (rejecting the notion that "there can be such a thing as a normally 'good' drunk driver"); *Schrefler v. State,* 660 N.E.2d 585, 588 (Ind.Ct.App. 1996) (recognizing the state's interest in keeping its highways safe from intoxicated drivers); *see also Governor's Council on*

*Impaired & Dangerous Driving 2002 Annual Report* 6 (2003) (noting that in the year 2001, 337 people died in alcohol-related crashes in Indiana).

To be sure, drunk driving is not a public safety concern unique to Indiana. The Supreme Court has said that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Mich. Dep't of State Police v. Sitz,* 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). The Court has also observed:

> The situation . . . of the drunk driver— occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy.

*South Dakota v. Neville,* 459 U.S. 553, 558, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). *See also* Alcohol, Drug Abuse, & Mental Health Admin., U.S. Dep't of Health & Human Servs., *Tenth Special Report to the U.S. Congress on Alcohol & Health* 391 (2000) (pointing out "[t]he current level of 16,000 deaths and more than one million injuries in alcohol-related traffic accidents each year demonstrates the need for continuing attention to this major public health problem").

Given the strong state and national interest of keeping persons who are intoxicated from operating motor vehicles, we think it sound policy to encourage sober drivers to get behind the wheel and not let their friends drive while drunk. It is true that a person may be so intoxicated that she may be unable to give her consent in other contexts. However, in the case of an intoxicated would-be driver, the level of sobriety should not prohibit another person from relying on the driver's request to operate her car. In essence, the fact that a would-be driver is extremely intoxicated has no bearing on whether she can nonetheless give her permission for a sober designated driver to drive her car.

### Conclusion

Because Smith was not legally entitled to drive we affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.