**Edward J. MROZ, Appellant–
Defendant,**

v.

**INDIANA INSURANCE COMPANY,
Appellee–Plaintiff.**

**No. 71A03–0212–CV–443.**

Court of Appeals of Indiana.

Oct. 7, 2003.

Richard J. Lasalvia, Keller & Keller, Granger, IN, Attorney for Appellant.

Dane L. Tubergen, Lynn E. Kalamaros, Hunt Suedhoff Kalamaros LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Edward J. Mroz appeals from the entry of summary judgment in favor of Indiana Insurance Company ("IIC") on its complaint for a declaratory judgment.

We affirm.

### ISSUE

Whether the trial court erred by granting IIC's motion for summary judgment.

### FACTS

In March 1999, IIC issued an automobile insurance policy to Michael Heiden. Beginning in January 2000, Michael allowed his seventeen-year-old son, James, to drive his 1984 Econoline van[1] to and from school, and to work. On March 20, 2000, James' driver's license was suspended due to excessive absences at school that were reported to the Bureau of Motor Vehicles. James was living with Michael at the time. Although Michael knew that James' driver's license was suspended, he continued to allow James to drive to and from school and for errands at times; however, except for trips to school or work, James was required to obtain permission every time he used the van.[2] In his November 15, 2001 deposition, Michael acknowledged that he and James knew that James' license was suspended and that it was not "legal" for James to drive, even for school. (Appellant's App. 97).

On April 7, 2000, Michael gave a family friend, Steve Held, permission to drive the van to take James bowling. Michael specifically told James that he did not have permission to drive the van that evening. At approximately midnight, as Held, James, and one of James' friends were preparing to drive away from the bowling alley, Held and a man with a baseball bat became engaged in a verbal confrontation. As Held drove away, the man with the baseball bat struck the back of the van and threw the baseball bat toward the van. Held returned to the bowling alley parking lot and got out of the van. James was in the passenger seat, with the window rolled down, and his friend was in the back. James saw a man approaching the passenger-side window wielding a knife. James saw the man "with the knife running toward [his] door with the knife raised above his head," and James "thought he was going to try to stab [him] through the window." (Appellee's App. 68). James jumped into the driver's seat and began driving away to escape the man with the knife. James then realized that the van's brakes were failing, and he lost control of the van. Apparently, without realizing that he had done so, James had struck

1. The title to the van was in the name of Michael and his ex-wife.

2. James gave a conflicting statement to a claims representative for IIC on June 28, 2000. In that statement, James indicated that Michael had not given him permission, nor had he driven the van after his driver's license was suspended. (Appellee's App. 66, 74). In his deposition, given on November 15, 2001, James stated that Michael had given him permission to drive after James' license was suspended. (Appellant's App. 62–63, 74, 76). Other less significant variations are apparent from a comparison of the recorded statement with the deposition. However, the comparison cannot be fully assessed inasmuch as the record on appeal contains only excerpts of James' deposition within the Appellant's Appendix, whereas the Appellee's Appendix contains the entire statement recorded by IIC. The variations do not have an impact upon our resolution.

Mroz, a pedestrian. The van came to rest in a liquor store.

In January 2001, IIC filed its amended complaint, for declaratory judgment in which it sought a declaration that James was not covered by Michael's IIC automobile policy on April 8, 2000, when James struck Mroz. IIC named Michael, James, and Mroz as defendants. In IIC's complaint, it asserted that it had no duty to defend the Heidens or pay insurance proceeds under the policy stemming from the April 8, 2000 incident.

On March 6, 2001, Mroz filed his answer and cross-complaint against Michael and James. In his cross-complaint, Mroz alleged that he suffered damages as a result of the negligence of Michael, in allowing James to drive, and the negligence of James, in driving in a manner that caused his injuries.

On June 29, 2001, IIC filed its motion for summary judgment. In a November 15, 2001 deposition, James testified that he believed he would have had permission from his father to drive the van on April 8, 2000 under the circumstances. He based his belief upon the fact that after his license was suspended, his father had allowed him to drive to school and to run some errands; and because, at the time of the incident, James felt that his "life was in danger." (Appellant's App. 77). On December 31, 2001, Mroz filed his response opposing summary judgment based in part on James' November 15, 2001 deposition.

On May 21, 2002, the court held a hearing on the motion for summary judgment. IIC urged that the undisputed facts disclosed that James could not have had a "reasonable belief" that he was "entitled" to drive the van on the early morning of April 8, 2000 because James knew his license was suspended, and Michael had specifically told James the night before

that he did not have permission to drive. (Tr. 4). On October 29, 2002, the court granted summary judgment in favor of IIC on its complaint for declaratory judgment.

## DISCUSSION

Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Warner Trucking, Inc. v. Carolina Casualty Ins. Co.*, 686 N.E.2d 102, 104 (Ind.1997) (citing Ind. Trial Rule 56(C)). In reviewing the trial court's entry on a summary judgment motion, we apply the same standard used in the trial court, *i.e.*, whether there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind. 1998).

The insurance policy issued to Michael defines an "insured" as:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer[."]

2. Any person using "your covered auto[."]

(Appellee's App. 18). The policy excluded coverage for any "insured," while "[u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do so." (Appellee's App. 18).

Mroz contends that the designated evidence discloses that James was an "insured," and that from the course of conduct of the parties, James had reasonable belief that he was entitled to drive the van under the circumstances. Mroz asserts that, at the very least, the material facts are in dispute as to whether James could have had a reasonable belief that he was allowed to drive at the time that he struck Mroz.

In *Smith v. Cincinnati Ins. Co.*, 790 N.E.2d 460, 461 (Ind.2003), our supreme court implicitly approved a five-part test for determining the applicability of a coverage exclusion with terms nearly identical to those in the present case. The court noted: "[t]he policy provision at issue in this case excludes coverage for any person '[u]sing a vehicle without a reasonable belief that that person is entitled to do so.'" *Id.* Our supreme court in *Smith* vacated this court's decision[3] and disagreed with an inference regarding an intoxicated person's ability to give permission for another to drive. Such is not applicable to the circumstances herein. Although the supreme court vacated this court's decision, it reiterated the five-part test "to determine whether a driver has a reasonable belief that she is entitled to drive anther person's car":

> (1) whether the driver has the express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was legally entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; and (5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe that she was entitled to drive.

*Id.* In *Smith*, a fifteen-year-old attempted to drive her intoxicated friend home. The driver held only a learner's permit "and could lawfully drive only when accompanied by a guardian or relative who holds a valid operator's license." *Id.* at 460. The intoxicated friend was not a guardian or relative. The supreme court held that the driver in *Smith* "was not legally entitled to drive" and affirmed the trial court's judgment that determined that the driver was not covered under the intoxicated friend's insurance policy. *Id.* at 462.

The insurance policy provision at issue here is nearly identical to that in *Smith.* Similar to the circumstances regarding the driver in *Smith*, James' driver's license had been lawfully suspended, and, therefore, he did not hold a valid driver's license at the time he drove Michael's van on April 8, 2000. Thus, pursuant to the third factor set out above, James could not have reasonably believed that he was entitled to drive under the laws of the State of Indiana. Such a determination is dictated by the undisputed facts in this case.

While the above is dispositive, we also note that the undisputed facts reveal that James would not have met any of the five factors. First, James did not have express permission to use the van; in fact, he had been expressly forbidden to use the van at the time of the incident. Inasmuch as James did not have express permission to drive, the second factor of exceeding that permission is inapplicable. The fourth and fifth factors do not appear to have any applicability once it is determined that, pursuant to the third factor, the driver was not legally entitled to drive under the laws of the State of Indiana.

█ Mroz contends that James could have reasonably believed that he was entitled to drive because an emergency existed. In criminal actions, an "extreme emergency" defense can be asserted. Indiana Code § 9–30–10–18 provides:

> In a criminal action brought under section 16 [driving with a suspended license] or 17 [driving after privileges suspended for life] of this chapter, it is a defense that the operation of a motor vehicle was necessary to save life or

---

3. *Smith v. Cincinnati Ins. Co.*, 769 N.E.2d 599 (Ind.Ct.App.2002), *vacated.*

limb in an extreme emergency. The defendant must bear the burden of proof by a preponderance of the evidence to establish this defense.

We are not faced here with a criminal action wherein James could assert such a defense. Nor are we presented with an argument that the existence of an emergency would serve to rewrite the contract between IIC and Michael. The contract forecloses insurance coverage for a driver who is not legally entitled to drive. Thus, our decision as to the liability of the insurer is controlled by our supreme court's decision in *Smith*, 790 N.E.2d 460.

Accordingly, the trial court's order granting IIC summary judgment is affirmed.

MAY, J., and BARNES, J., concur.