## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2016, 5:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason E. Hammock,

*Appellant-Petitioner/Defendant,*

v.

State of Indiana,

*Appellee-Respondent/Plaintiff.*

December 30, 2016

Court of Appeals Case No.
63A01-1605-CR-1117

Appeal from the
Pike Circuit Court

The Honorable
Jeffrey L. Biesterveld, Judge

Trial Court Cause No.
63C01-1512-F6-605

**Kirsch, Judge.**

[1] The driving privileges of Jason E. Hammock ("Hammock") were administratively suspended by the Indiana Bureau of Motor Vehicles ("the

BMV") on the grounds that he refused to submit to a chemical test as required by Indiana Code section 9-30-6-7. Hammock filed a petition requesting that the trial court review whether his license was properly suspended. After a hearing, at which no State witnesses testified, the trial court denied Hammock's petition. On appeal, Hammock contends that the trial court erred when it found as basis for suspension that Hammock had refused a chemical test. For reasons explained below, we dismiss this appeal as moot, but remand to the trial court with instructions to comply with the terms agreed to during Hammock's plea hearing.

We dismiss and remand with instructions.

## Facts and Procedural History

On December 27, 201, Deputy Paul Collier ("Deputy Collier") of the Pike County Sheriff's Office responded to a report of a single-car accident. At the scene, he found a driver, later identified as Hammock, who admitted he had been drinking. Hammock, who was injured in the accident, refused treatment at the scene, and Deputy Collier arrested him and took him to the county jail. Upon their arrival, the jail nurse saw Hammock's injuries and advised Deputy Collier to take Hammock directly to the hospital where, among other things, Hammock "got a blood test." *Tr.* at 24. After the medical treatment was completed, Deputy Collier transported Hammock to jail, where he remained incarcerated throughout the criminal proceedings.

[4] Deputy Collier completed a probable cause affidavit, setting forth the facts leading to Hammock's arrest, and filed that affidavit with the trial court on December 29, 2015. The affidavit in pertinent part provided: (1) Hammock ran a stop sign, crossed the intersection, jumped a ditch, and landed in a field; (2) Hammock's breath smelled of alcohol and he had watery eyes and was unstable on his feet; (3) an empty beer can was next to the driver's seat and seven unopened beers were in a cardboard box on the car floor; (4) Hammock admitted he "had drunk some Royal Crown and a six-pack [of beer] prior to driving"; (5) the jail nurse advised Deputy Collier to take Hammock directly to the hospital; and (6) Deputy Collier gave Hammock a portable breath test, and "he had a BAC of .34." *Appellant's App.* at 16-17. In the affidavit, Deputy Collier specifically affirmed, "I advised Mr. Hammock of the implied consent warning and he refused." *Id*. at 17.

[5] On December 29, 2015, the State charged Hammock with Count 1, operating a vehicle while intoxicated[1] ("OWI") as a Class C misdemeanor; Count 2, leaving the scene of an accident[2] as a Class B misdemeanor; and Count 3, OWI

---

[1] *See* Ind. Code § 9-30-5-2(a).

[2] *See* Ind. Code § 9-26-1-1.1(a)(1).

with a prior conviction within the previous five years[3] as a Level 6 felony. *Appellant's App.* at 7, 9.[4]

[6] The trial court found probable cause to believe that Hammock "violated IC 9-30-5" (pertaining to operating a vehicle while intoxicated) and forwarded a copy of Deputy Collier's affidavit to the BMV with a recommendation that Hammock's driving privileges be suspended. *Id.* at 15. Pursuant to Indiana Code section 9-30-6-9, the BMV administratively suspended Hammock's driving privileges based on his refusal to submit to a chemical test. In March 2016, while still in jail, Hammock filed a petition for judicial review of his license suspension claiming that a finding of refusal was error, and a hearing on that matter was set.

[7] On April 4, 2016, Hammock pleaded guilty pursuant to a plea agreement to the two OWI counts—Count 1 as a Class C misdemeanor and Count 3 as a Level 6 felony. The trial court accepted Hammock's plea and the terms of the plea agreement, pursuant to which the State and Hammock agreed: (1) Counts 1 and 3 merged for purposes of sentencing; (2) Hammock would receive a one-

---

[3] *See* Ind. Code § 9-30-5-3(a)(1). This section elevates the offense of operating while intoxicated ("OWI") to a Level 6 felony if defendant has a previous conviction for OWI that occurred within the five years immediately preceding the offense being charged. Hammock was convicted of operating a vehicle with a blood alcohol concentration of .08 or more, under cause number 63C01-1101-CM-7, on May 19, 2011, which was within that five-year window.

[4] Hammock filed a two-volume appendix with this court. Volume 1 is a table of contents for Volume 2. Because we cite only to Volume 2, all references to *Appellant's App.* refer to that volume.

year executed sentence on Count 3, of which he had served 100 actual days,[5] had credit for 100 days, and had 165 days left to serve; (3) the State would dismiss Count 2; (4) Hammock would pay a fine plus court costs; and (5) Hammock's "driving privileges shall be suspended for zero (0) additional days." *Tr.* at 11; *Appellant's App.* at 34, 41.

[8] That same day following the plea hearing, the trial court held a second hearing to address Hammock's petition for judicial review of the administrative suspension of his license on the basis that he refused to submit to a chemical test. At the close of the hearing, the trial court took judicial notice of Deputy Collier's affidavit and its contents and took the matter under advisement. The trial court denied Hammock's petition on April 19, 2016. Hammock now appeals. We set forth additional facts where necessary.

## Discussion and Decision

[9] In Indiana, when a person refuses to submit to a chemical test, "the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges." Ind. Code § 9-30-6-7(a). If that person: (1) refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges; or (2) submits to a chemical test that

---

[5] The 100 days represented Hammock's incarceration from the date of his arrest, December 27, 2015, through and including the date of his plea, April 4, 2016.

results in prima facie evidence of intoxication, the arresting officer shall do the following:

> (1) Obtain the person's driver's license or permit if the person is in possession of the document and issue a receipt valid until the initial hearing of the matter held under IC 35-33-7-1.

> (2) Submit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred.

Ind. Code § 9-30-6-7(b).

Whenever a judicial officer has determined there is probable cause to believe that a person has violated Indiana Code chapter 9-30-5, the clerk of the court shall forward to the BMV an affidavit, signed by the arresting officer, stating: (1) the grounds for the arresting officer's belief that the person was OWI in violation of Indiana Code chapter 9-30-5; (2) that the person was arrested for a violation of Indiana Code chapter 9-30-5; and (3) whether the person refused to take a chemical test or submitted to a chemical test that resulted in prima facie evidence the person was intoxicated. Ind. Code § 9-30-6-8(a), -8(b). After finding probable cause, the trial court must enter an order at the initial hearing on the criminal matter setting forth that such person's driving privileges be suspended. Ind. Code § 9-30-6-8(c). The BMV, in turn, must mail notice to such person setting forth the length of the suspension and informing the person of their right to judicial review pursuant to Indiana Code section 9-30-6-10. Ind. Code § 9-30-6-9(d).

[11]     The length of administrative suspension depends on the basis for the suspension. If the chemical test resulted in prima facie evidence that the person was intoxicated, the BMV must suspend the person's license for 180 days or until the BMV is notified by the trial court that the charges have been disposed of, whichever comes first. Ind. Code § 9-30-6-9(c). If, however, the basis for suspension is refusal to submit to a chemical test, and the person has a prior conviction for OWI, the BMV must suspend the driving privileges of that person for two years or until the suspension is terminated under Indiana Code chapter 9-30-5, whichever comes first. Ind. Code § 9-30-6-9(b). Both statutes provide the trial court with the power to terminate the administrative suspension as part of defendant's sentencing on the underlying conviction for OWI.

[12]     The policy surrounding the scheme of administrative suspension reflects "the toll that drunk driving has taken on the general public and the state's interest in preventing accidents caused by drivers who are intoxicated." *Burnell v. State*, 56 N.E.3d 1146, 1147 (Ind. 2016) (citing *Smith v. Cincinnati Ins. Co.*, 790 N.E.2d 460, 461 (Ind. 2003)). "To combat the serious harm inflicted by drunk drivers, all fifty States and the District of Columbia have enacted laws prohibiting motorists from driving with a blood alcohol concentration exceeding a specific level." *Id.* "Determining whether a driver's blood alcohol concentration exceeds the legal limit requires a test, 'and many drivers stopped on suspicion of drunk driving would not submit to testing if given the option. So every State also has long had what are termed "implied consent laws."'" *Id.* (quoting

*Birchfield v. North Dakota*, ___U.S.___, 136 S. Ct. 2160, 2166, 195 L. Ed. 2d 560 (2016)). Indiana's implied consent law provides: "A person who operates a vehicle impliedly consents to submit to the chemical test provisions of this chapter as a condition of operating a vehicle in Indiana." *Id*. (citing Ind. Code § 9-30-6-1). In turn, when a law enforcement officer has probable cause to believe a motorist has operated a vehicle while intoxicated, the officer must offer the motorist an opportunity to submit to a chemical test. *Id*. (citing Ind. Code § 9-30-6-2(a)). "If a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges." Ind. Code § 9-30-6-7(a).

[13] Here, Deputy Collier submitted an affidavit to the trial court setting forth that Hammock's BAC was .34 and stating that Hammock refused to submit to a chemical test. The trial court forwarded that affidavit to the BMV with the recommendation that Hammock's license be suspended. It was on that basis that the BMV administratively suspended Hammock's driving privileges. We find nothing in the record before us indicating the duration of that suspension.[6]

[14] In March 2016, Hammock petitioned for review of that suspension, and the trial court held a hearing in April 2016. During the hearing, Hammock argued that, contrary to statements made in Deputy Collier's affidavit, he did not

---

[6] Pursuant to Indiana Code section 9-30-6-9(c), whenever the BMV is required to suspend a person's driving privileges, the BMV shall immediately mail notice to the person's address contained in the records of the BMV stating that the person's driving privileges will be suspended for a specified period. A copy of that letter is not in the record before us.

refuse to submit to a chemical test. As evidence, the State offered only Deputy Collier's affidavit and requested that the trial court take judicial notice of it, which the trial court did. The State offered the following pertinent statements in closing:

> The only fact in dispute, from what I can tell, is the fact, the one sentence in the probable cause affidavit that I advised Mr. Hammock of the implied consent warning and he refused. Mr. Hammock's disputing that. Right before that he tested .34 on the portable breath test, which is heavily intoxicated. My understanding was Mr. Hammock was cooperative throughout the entire process. Did admit that he was heavily intoxicated. . . . I don't think there's any issue. Mr. Hammock voluntarily went to the hospital. Got treated. Voluntarily gave up a blood sample that gave the test results. I, I don't think there's any issue with any of that. I don't dispute any of that. . . . State's position is I believe Mr. Hammock was cooperative. We're looking at . . . a fact issue, that is pretty technical as to whether or not implied consent was complied with or not.

*Tr.* at 30-31. The trial court took the matter under advisement and later denied Hammock's challenge to his license suspension.

[15] On appeal, Hammock asserts that the evidence was insufficient as a matter of law to sustain the trial court's determination that he refused to submit to a chemical test. Specifically, he contends that in the absence of any testimony from Deputy Collier, there was insufficient evidence of his refusal. The denial of Hammock's petition is a final judgment appealable in the manner of a civil action. *See* Ind. Code § 9-30-6-10(g); *Upchurch v. State*, 839 N.E.2d 1218, 1220 (Ind. Ct. App. 2005).

[16] Here, the existence of Hammock's plea agreement and the timing of the review hearing present a special set of circumstances.[7] The two hearings occurred back to back; when the plea hearing was completed, the hearing on the petition for judicial review began. During the plea hearing, the trial court, pursuant to the terms of the plea agreement, suspended Hammock's driving privileges for *zero* days. Then, apparently recognizing that Hammock's license had been administratively suspended, the trial court engaged in the following colloquy to clarify the status of that suspension.

> THE COURT: And um, there was an administrative suspension. Correct, gentlemen? You doing anything with the administrative suspension here?
>
> [PROSECUTOR]: Well it was a refusal, Judge.
>
> THE COURT: Okay.
>
> [PROSECUTOR]: So I don't know if there's an additional administrative suspension.
>
> THE COURT: Okay.
>
> [PROSECUTOR]: *If so that would be terminated*.

---

[7] The hearings pertaining to the plea hearing and the petition for review were held within minutes of each other, and the transcripts of those hearings were bound in one volume. That double transcript is part of the record before us.

THE COURT:  So there's, so there's no---I mean, it would be

[PROSECUTOR]:  It's the refusal part.

THE COURT:  Yeah.  There's no, there's no uh, there's no credit time on, on the refusal, so

[PROSECUTOR]:  Correct.

THE COURT:  So is that your understanding of the agreement, sir?

THE DEFENDANT:  Yes sir.

THE COURT:  Okay.  And Mr. Aldridge [(Defense Counsel)], is that your understanding?

[DEFENSE COUNSEL]:  Yes.

THE COURT:  Mr. Dysert [(Prosecutor)], is that your understanding as well?

[PROSECUTOR]: Yes, Your Honor.

THE COURT:  *How about we make it ninety (90) days from the defendant's release from incarceration.  Kind of hard for you to pay for it while you're in jail to get your license back.*  If I give you that much time, then when you get out you've got ninety (90) days from then to get paid.  Can you do that?

THE DEFENDANT:  Yeah.  Yes sir.

> THE COURT: Okay. So, it'd be ninety (90) days from his release from his executed sentence. . . .

*Id*. at 11-13 (emphasis added). The above colloquy clarified the parties' intent under the plea agreement to allow for the reinstatement of Hammock's license no later than December 15, 2016, a date that fell ninety days after his latest possible release from jail.[8]

[17] In the instant case, Hammock's plea agreement governs the terms of his license suspension. The decision to accept or reject a plea agreement is a matter left to a trial court's discretion. *Koontz v. State*, 975 N.E.2d 846, 849 (Ind. Ct. App. 2012), *aff'd on reh'g*, 983 N.E.2d 194 (Ind. Ct. App. 2013). However, once a plea agreement is accepted by the trial court, the plea agreement, like a contract, is binding upon all parties and the trial court. *Id*. Further, if the trial court accepts the plea agreement, it is strictly bound by the sentencing provisions of the plea agreement and is precluded from imposing any sentence other than that required by the agreement. *Id.* Pursuant to Indiana Code section 9-30-6-9, the trial court had the power to terminate Hammock's administrative suspension. Here, once the trial court accepted Hammock's plea agreement, the trial court was bound to suspend Hammock's driving privileges

---

[8] At the time of the plea hearing, and pursuant to the plea agreement, Hammock was sentenced to serve an additional 165 days executed. This meant that Hammock's latest release date from incarceration was September 16, 2016 (a date that was 165 days after his April 4, 2016 plea hearing). Pursuant to the colloquy held during the plea hearing, Hammock had the right to reinstate his license ninety days after he was released from incarceration, resulting in the latest reinstatement date being December 15, 2016 (a date that fell ninety days after a September 16, 2016 release date). *Tr*. at 12-13.

for *zero* additional days and notify the BMV that Hammock's license could be eligible for reinstatement no later than December 15, 2016, which was ninety days after Hammock's latest release date.

[18]    December 15, 2016 has passed, and, therefore, the issue of whether Hammock refused to submit to a chemical test is moot. Accordingly, we decline to address that issue. We dismiss this appeal and remand with instructions that the trial court notify the BMV, if it has not already done so, that, pursuant to Hammock's plea agreement and to the extent he complies with all other statutes and conditions pertaining to the possession of an Indiana driver's license, Hammock is now entitled to the reinstatement of his driving privileges.

[19]    This appeal is dismissed and the case remanded.

May, J., and Crone, J., concur.