2022 IL App (1st) 210525

THIRD DIVISION
March 9, 2022

No. 1-21-0525

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| UNITED EQUITABLE INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CICELY CALHOUN, Individually and as Mother and Next | ) | |
| Friend of JADIS BAKER, a Minor; LAFONYA CALHOUN; | ) | |
| ANDRE ROBINSON-DOCK, a Minor, by his Father and Next | ) | |
| Friend, HARRY DOCK; CHARLES McKINNEY, a Minor, by | ) | No. 19 CH 7056 |
| his Mother and Next Friend, YVONNE McKINNEY; JUSTIN | ) | |
| PATTERSON, a Minor, by his Father and Next Friend, LARRY | ) | |
| PATTERSON; DELACEY CHARP, a Minor, by his Father and | ) | |
| Next Friend, DELACEY CHARP; DAMIAN COLLINS, a Minor, | ) | |
| by his Father and Next Friend, VINCENT COLLINS; and | ) | |
| VILLAGE OF RICHTON PARK, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (ANDRE ROBINSON-DOCK, a Minor, by his Father and Next | ) | |
| Friend, HARRY DOCK, | ) | Honorable |
| | ) | Sophia Hall |
| Defendant-Appellant). | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from a declaratory judgment action brought by plaintiff, United Equitable Insurance Company (UEI), seeking a finding that it had no duty to defend, indemnify, or provide coverage in relation to an October 4, 2018, automobile accident.

¶ 2    The record shows that on September 22, 2018, Cicely Calhoun was issued an automobile insurance policy by UEI, which covered her Chevrolet Impala. The policy listed both Calhoun and her 16-year-old son, Jadis Baker, who had been issued a graduated driver's license days earlier, as operators of the vehicle. Less than two weeks later, on October 4, 2018, Baker was driving five passengers in the Impala, which had seatbelts for only a driver and four passengers, when Baker collided with a light pole.

¶ 3    On May 22, 2019, Andre Robinson-Dock, one of the passengers in the vehicle at the time of the accident, brought a lawsuit for personal injuries.

¶ 4    Thereafter, on June 11, 2019, UEI filed a declaratory judgment action against Baker, Calhoun, Robinson-Dock, and the other alleged passengers. UEI alleged that, at the time of the accident, Baker held a graduated driver's license and the graduated licensing statute prohibited Baker from operating a motor vehicle with more than one passenger under the age of 20, excluding siblings, stepsiblings, children, or stepchildren of the driver. UEI alleged that there were five passengers in Baker's vehicle at the time of the collision, all of whom were under the age of 20 and were not Baker's siblings, stepsiblings, children, or stepchildren. UEI further alleged that the Impala seated a driver and four passengers, and Baker was driving the vehicle in violation of the graduated licensing statute and the Illinois Vehicle Code, both of which prohibited him from operating the vehicle with more than one passenger in the front seat and more passengers in the back seats than the number of available safety belts.

¶ 5　Based on the above, UEI argued that a policy exclusion applied to exclude liability coverage. That exclusion provided that the policy did not apply to "any person operating the owned automobile or a non-owned automobile without a reasonable belief that he or she is entitled to do so." UEI argued that Baker could not have had a "reasonable belief that he was entitled to operate" the Impala with five young passengers at the time of the accident, and with more passengers than seat belts, and that liability coverage was therefore excluded under the policy. UEI requested a finding that it owed "no duty to defend, indemnify or otherwise provide coverage to" Baker or Calhoun, in Robinson-Dock's lawsuit, or in "any case or liability claim relating to the October 4, 2018 accident."

¶ 6　All defendants, except for Robinson-Dock, failed to appear in this matter and were ultimately held in default.

¶ 7　Robinson-Dock, however, filed an appearance on September 13, 2019, and filed an answer and affirmative defenses on September 16, 2019. Robinson-Dock generally admitted UEI's allegations regarding Baker's age and that he possessed a graduated license. Robinson Dock also admitted that the Impala seated a driver and four passengers and that Baker had five passengers in the Impala at the time of the accident. Additionally, Robinson-Dock admitted that the five passengers were under age 20 and that they were not Baker's siblings, stepsiblings, children, or stepchildren. Robinson-Dock denied UEI's allegations that Baker lacked a reasonable belief that he was entitled to operate the vehicle at the time of the accident or that the reasonable belief exclusion excluded coverage under the policy.

¶ 8　In his first affirmative defense, Robinson-Dock alleged that Baker was named in the policy as an operator, that he had a valid driver's license, and that he had given Robinson-Dock permission to be present as a passenger at the time of the accident. Robinson-Dock claimed that,

as a permissive user of the vehicle, he was an insured under the policy. He further alleged that denying coverage to him as a permissive passenger would violate public policy and, therefore, the reasonable belief exclusion was unenforceable against him.

¶ 9    In a second affirmative defense, Robinson-Dock alleged that under the policy's uninsured motorist provision, the policy defined the "insured" to include the named insured or "any other person while lawfully occupying an insured automobile." Robinson-Dock alleged that he was lawfully occupying the vehicle at the time of the accident and he was therefore an "insured" under the policy's uninsured motorist coverage.

¶ 10    UEI answered Robinson-Dock's affirmative defenses on October 18, 2019. UEI "neither admit[ted] nor den[ied]" Robinson-Dock's allegation that he was given permission to be a passenger in the vehicle, deeming it conclusory, and further stated that UEI lacked sufficient knowledge to admit or deny the allegation. UEI also denied that Robinson-Dock was lawfully occupying the vehicle at the time of the accident.

¶ 11    On August 4, 2020, UEI filed a motion for "prove-up," requesting a default judgment against the defendants who had failed to appear, and further requesting summary judgment against Robinson-Dock. UEI argued that Robinson-Dock had admitted the facts necessary to find that Baker could not have had a reasonable belief that he was entitled to drive at the time of the accident, as he was driving in violation of the conditions placed on his graduated license. UEI asked the court to find that Baker, being "newly-licensed" under the graduated licensing program, "could not have had a reasonable belief that he was entitled to operate the Impala on October 4, 2018 with five teenage passengers[,]" and "with five passengers when there were only four safety belts for passengers in the vehicle." UEI also argued that public policy supported the application of the exclusion, citing the Frequently Asked Questions section of the Illinois [Graduated Driver's

License] Parent-Teen Driving Guide issued by the Secretary of State. In response to a question regarding why the law limited the number of passengers for graduated license holders, the Secretary of State responded that such restrictions

> "reduce the likelihood of a young, inexperienced driver being distracted by a car full of teens. According to the National Highway Traffic Safety Administration, for teenage drivers, the presence of one passenger nearly doubles the fatal crash risk compared with driving alone. With two or more passengers, the fatal crash risk is five times as high as driving alone."

¶ 12    UEI asked the court to find that the reasonable belief exclusion excluded all liability coverage and that UEI was not obligated to "defend, indemnify or otherwise provide coverage to Baker in [Robinson-Dock's] [l]awsuit or in any case or liability claim" related to the accident.

¶ 13    Robinson-Dock responded to UEI's motion for summary judgment on August 31, 2020. Robinson-Dock noted that UEI admitted that Baker had a valid license and that none of the authority relied on by UEI in its summary judgment motion involved a driver with a graduated license. Robinson-Dock argued that there were material issues of fact and that UEI had not shown that it was entitled to summary judgment.

¶ 14    The trial court held a hearing on November 23, 2020. While no transcript of that hearing appears in the record on appeal, the parties have submitted an agreed statement of facts in lieu of a report of proceedings. That agreed statement, however, provides no details as to what occurred at the hearing, noting only that the court heard oral argument from both parties and that no court reporter was present.

¶ 15    Thereafter, on April 22, 2021, the court entered a written order. The court found

"that there is no question as to the material facts in this matter. On October 4, 2018, Jadis Baker was a 16-year-old driving a vehicle with a graduated driver's license, subject to the driving restrictions contained in [the graduated driver's license statute], and was driving 5 passengers all under the age of 20 years old, in a vehicle that only contained seatbelts for 4 passengers. Jadis Baker knew he was driving in violation of the restrictions placed on his graduated driver's license. Therefore, Jadis Baker had no reasonable belief that he was entitled to operate the *** Chevrolet Impala when it was involved in an accident on October 4, 2018."

¶ 16 The court entered summary judgment on the complaint in favor of UEI and against all defendants. The court further found that the policy "provides no coverage to, or for the benefit of, any of the Defendants named in this case with respect to the October 4, 2018, accident"; that UEI owed "no duty to defend, indemnify or otherwise provide coverage to" Baker or Calhoun in Robinson-Dock's lawsuit "or in any case or claim arising from" the accident; and that UEI owed "no duty to pay, settle, arbitrate, defend or indemnify as to any claim or lawsuit relating to" the accident. Robinson-Dock filed a timely notice of appeal on May 6, 2021.

¶ 17 In this court, Robinson-Dock appeals the trial court's grant of summary judgment. He argues that the court erred in granting summary judgment because driving outside the parameters of a graduated driver's license is not the equivalent of driving without a license. Robinson-Dock further asserts that he is an insured under the policy, and that the reasonable belief exclusion is against Illinois public policy. Finally, Robinson-Dock contends that the insurance policy is ambiguous and that the reasonable belief exclusion should be deemed unenforceable. Both parties acknowledge that this is a case of first impression—no Illinois court has considered a similar case involving the reasonable belief exclusion and a driver with a graduated driver's license.

6

¶ 18 As stated above, this appeal is from the trial court's grant of summary judgment in favor of UEI. "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). Summary judgment is precluded where "the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 19 The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Although the burden is on the moving party to establish that summary judgment is appropriate, the nonmoving party must present a *bona fide* factual issue and not merely general conclusions of law. *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010).

> "Once the moving party has met these burdens, the burden then shifts to the nonmoving party. [citation] While it need not prove its case at this preliminary stage, the nonmoving party must, nevertheless, present some factual basis to support its claim, and it is not simply entitled to rely on the allegations in its pleading in order to raise a genuine issue of material fact."

*800 South Wells Commercial LLC v. Cadden*, 2018 IL App (1st) 162882, ¶ 26; see also *Allegro Services Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996) (A party opposing a motion for summary judgment "must present a factual basis which would arguably entitle him to a judgment."). "Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). " 'The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.' " *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)).

¶ 20 We note initially that the facts underlying this matter are generally undisputed. Baker was 16 years old and held a graduated driver's license at the time of the accident. Baker was driving five passengers—all of whom were under the age of 20 years old and were not Baker's siblings, step-siblings, children, or stepchildren—in a vehicle that contained seatbelts for four passengers.

¶ 21 The policy provision at issue in this case is exclusion (h) of the policy's liability coverage. It provides that the policy does not apply to provide liability coverage to "any person operating the owned automobile or a non-owned automobile without a reasonable belief that he or she is entitled to do so."

¶ 22    Very similar "reasonable belief" exclusions were considered by our supreme court in *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424 (2010). In that case, the supreme court consolidated six appeals in cases relating to unlicensed drivers who had been involved in motor vehicle accidents. *Id.* at 427. The insurance companies in those cases similarly filed complaints for declaratory judgment seeking declarations that they owed no duty to defend or indemnify based on the drivers having no "reasonable belief" that they were "entitled" to drive where they lacked valid driver's licenses.

¶ 23    The supreme court initially set out the applicable standard:

> "Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy. [Citations.] Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. [Citations.] If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy. [Citations.] The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage only applies where the provision is ambiguous. [Citations.] A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. [Citation.] Rather, an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation. [Citations.] While we will not strain to find an ambiguity where none exists [citation], neither will we adopt an interpretation which rests on gossamer distinctions that the average person, for whom the policy is written, cannot be expected to understand [citation]. When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose. Thus,

an insurance policy must be considered as a whole; all of the provisions, rather than an isolated part, should be examined to determine whether an ambiguity exists." (Internal quotation marks omitted.) *Id.* at 433.

¶ 24 The supreme court then reviewed the reasonable belief exclusion in the policies, noting that it was giving the undefined term, "entitled," its "plain, ordinary and popular meaning." *Id.* at 436. The supreme court concluded that the term "entitled" to drive encompassed both ownership and permission from an owner, as well as the legal right to drive on the public roadways. In so holding, the supreme court rejected the argument that the provision should be read to include only ownership or permission or that such an interpretation was "at least *a* reasonable interpretation of an ambiguous policy provision." (Emphasis in original). *Id.* at 434. The supreme court explained:

"Irrespective of whether a person owns the vehicle, or is a permissive user, without a valid license, a person cannot have a reasonable belief that he or she is entitled to drive in this state. Without a valid license, a person has not been given the 'right' to drive; has not been 'qualified' to drive; has not been 'furnished with proper grounds' for doing so. See Webster's Third New International Dictionary 758 (1993). Accordingly, each of the six drivers at issue here, who either never obtained a license or whose license was suspended, could not, as a matter of law, have a reasonable belief that he was entitled to drive simply because he owned the car or was given the keys." *Id.* at 438.

¶ 25 Robinson-Dock argues, first, that summary judgment in favor of UEI should be reversed because "driving outside the parameters of a graduated driver's license is not the equivalent of driving with no driver's license." The question, however, is not whether Baker's actions were the equivalent of driving without a license. The supreme court in *Founders* held that, based on the

10

drivers' unlicensed status, the insureds did not have a reasonable belief that the driver was entitled to drive; it did not hold that the reasonable belief exclusion *only* applies to exclude coverage to unlicensed drivers. Instead, the supreme court's decision in *Founders* establishes that "entitled" includes a driver's "legal right to drive the vehicle on the public roadways." Accordingly, the question for this court is whether the undisputed facts here establish that the driver had such a legal right at the time of the accident. We conclude that he did not.

¶ 26    The graduated licensing statute provides conditions for the operation of a motor vehicle by a graduated license holder. Specifically, the statute provides that "[n]o graduated driver's license holder under the age of 18 years shall operate any motor vehicle *** with more than one passenger in the front seat of the motor vehicle and no more passengers in the back seats than the number of available seat safety belts." 625 ILCS 5/6-107(e) (West 2016). The statute also provides that for the first 12 months that a person holds a graduated license, he or she "may not operate a motor vehicle with more than one passenger in the vehicle who is under the age of 20, unless any additional passenger or passengers are siblings, step-siblings, children, or stepchildren of the driver." *Id.* § 6-107(g). Moreover, the statute provides penalties for violation of the above provisions, extending the application of the respective paragraphs "until such time as a period of 6 consecutive months has elapsed without an additional violation." The above provisions in the graduated licensing statute are mandatory. See *In re M.I.*, 2013 IL 113776, ¶¶ 16, 21 ("statutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision," and the use of "shall "usually *** indicate[s] the legislature intended to impose a mandatory obligation" (internal quotation marks omitted)).

¶ 27    Based on our reading of the graduated licensing statute, we conclude that a graduated license is a limited license that gives graduated license holders the right to drive, but only under

the conditions outlined in the statute. Specifically, a graduated license does not entitle a holder to operate a vehicle "with more than one passenger in the vehicle who is under the age of 20" or "with more than one passenger in the front seat *** [or] more passengers in the back seats than the number of available seat safety belts." As the undisputed facts establish that Baker was operating the vehicle in violation of the above conditions placed upon his graduated license, Baker was not legally entitled to operate the vehicle at the time of the accident.

¶ 28    Robinson-Dock, however, maintains that there are issues of material fact that preclude the entry of summary judgment, including questions regarding Baker's knowledge at the time of the accident. Robinson-Dock notes that he denied UEI's allegation that Baker lacked a reasonable belief that he was entitled to drive and contends that there is "nothing in the record regarding what [Baker] knew or did not know about being entitled to drive."

¶ 29    A party opposing summary judgment "is not entitled to rely on the allegations of her pleading to raise a genuine issue of material fact, but must affirmatively controvert evidence adduced by the moving party." *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 19. Robinson-Dock, however, relies only on his own conclusory statement in his answer to dispute the evidence put forth by UEI. Robinson-Dock has not provided any factual support from which it could be determined that it would have been reasonable for Baker to believe that he could operate the vehicle at the time of the accident, and, in any event, it is unclear how Robinson-Dock's personal denial of an allegation regarding Baker's beliefs could have any significance. See Ill. R. Evid. 602 (eff. Jan. 1., 2011) ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Schuster v. Occidental Fire and Casualty, Co.,* 2015 Ill App (1st) 140718, ¶ 20, quoting *Seefeldt v. Millikin National Bank of Decatur,* 154 Ill. App. 3d 715, 718 (1987) ("[W]hen determining whether a

genuine issue of material fact exists in a summary judgment proceeding, 'a court should ignore personal conclusions, opinions, and self-serving statements and consider only facts admissible in evidence under the rules of evidence.' ").

¶ 30    While no Illinois case has considered whether driving outside the conditions of a graduated driver's license implicates the reasonable belief exclusion, we find further support for our conclusion in other jurisdictions, in cases involving drivers with learner's permits.

¶ 31    In *Smith v. Cincinnati Insurance Co.*, 790 N.E.2d 460, 460 (Ind. 2003), the Supreme Court of Indiana considered a case involving 18-year-old Natalie Deem, who, after becoming intoxicated, gave permission to her 15-year-old friend, Courtney Smith, to drive Deem's vehicle home. Smith, however, had a learner's permit and could only lawfully drive when accompanied by a guardian or relative holding a valid operator's license. *Id.* While driving Deem home, Smith ran off the roadway, which was covered with snow and ice, injuring them both. *Id.* at 460-61.

¶ 32    The Supreme Court of Indiana disagreed with the trial court that Deem was too intoxicated to give consent to Smith and concluded that Deem's intoxication had no bearing on whether she could give permission to Smith to drive her car. The court found it "sound policy to encourage sober drivers to get behind the wheel and not let their friends drive while drunk." *Id.* at 462. Nonetheless, the court affirmed the trial court's conclusion that the policy provision excluding coverage for any person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so" precluded coverage, since "Smith's belief that she was entitled to drive Deem's car was not reasonable" where she was driving without an accompanying relative or guardian with a valid license, in violation of the conditions of her learner's permit. (Internal quotation marks omitted.) *Id.* at 461; see also *Founders Insurance Co. v. Gurung*, No. 28508-28511, 2017 WL 6374605, at *2 (D. Ohio Dec. 13, 2017) (affirming summary judgment in favor of insurer where a driver was

driving without an accompanying licensed operator, in violation of his temporary driver's permit. Coverage under the policy was excluded if the vehicle was "being operated by a person who * * * is in violation of any condition of their driving privileges" (internal quotation marks omitted)).

¶ 33 Although Baker had a graduated license, and not a "learner's permit" like the driver in *Smith*, the license he held was similarly restricted and subject to the conditions provided in the graduated licensing statute (625 ILCS 5/6-107 (West 2016)). Like the driver in *Smith*, Baker could lawfully drive a vehicle only if he complied with the restrictions on his license, described above. When Baker drove in violation of the conditions of his graduated driver's license, he could not have had a reasonable belief that he was entitled to operate the vehicle.

¶ 34 Robinson-Dock next contends that he is an "insured" under the insurance policy, as the policy's liability coverage defines "person insured" to include "any other person using the owned automobile to whom the named insured has given permission, provided the use is within the scope of such permission." Robinson-Dock alleges that Baker gave him permission to be a passenger in the vehicle and that "use" of the vehicle includes his riding in it as a passenger. See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 402-03 (2010) (noting that "use" of an automobile "has been held to denote its employment for some purpose of the user," and concluding the term "use" includes riding in a vehicle as a permissive passenger). Robinson-Dock therefore contends that he is an insured under the policy and that application of the reasonable belief exclusion to deny him coverage as a permissive passenger is against public policy. This argument misses the mark.

¶ 35 The issue in this case is not whether Robinson-Dock is an insured under the policy, but rather whether the reasonable belief exclusion bars coverage. See *Wells v. State Farm Fire & Casualty Insurance Co.*, 2021 IL App (5th) 190460, ¶ 27 ("An exclusion in an insurance policy is

a provision that eliminates coverage that would have existed in the absence of the exclusion."). In providing liability coverage in this case, UEI agreed "[t]o pay on behalf of the insured, *** all sums which the insured shall become legally obligated to pay as damages because of *** bodily injury or *** property damage arising out of the ownership, maintenance or use of the owned automobile ***." We need not reach Robinson-Dock's argument that he is an insured under the policy's liability coverage, because our conclusion on that question would be of no consequence. This case does not involve a claim against Robinson-Dock that he is liable for damages arising out of his use of the vehicle.

¶ 36    We also reject Robinson-Dock's contention that applying the exclusion would violate public policy. "[T]he power [of a court] to declare a private contract void as against public policy [should be] exercised sparingly" and "[w]hether an agreement is contrary to public policy depends on the particular facts and circumstances of the case." *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129-130 (2005). "An agreement will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare." *Id.* Denying insurance coverage does not always implicate public policy concerns, and our supreme court has explicitly held that "[i]nsurers are not required to cover every possible loss and may legitimately limit their risks." *Founders*, 237 Ill. 2d at 442.

¶ 37    In arguing that the application of the reasonable belief exclusion in this case violates public policy, Robinson-Dock relies primarily on *Safe Auto Insurance Co. v. Fry*, 2015 IL App (1st) 141713. In *Fry*, the insurance policy at issue contained a similar "reasonable belief" exclusion in its uninsured motorist provision, which provided that uninsured motorist coverage would not apply

to a loss if the driver used the insured vehicle without a reasonable belief that he was entitled to do so. *Id.* ¶ 4. The insurance company sought to deny uninsured motorist coverage to a passenger who was riding with an unlicensed driver based on this exclusion. *Id.* ¶ 6. The trial court granted summary judgment in the insurer's favor, but the appellate court reversed, finding that it would violate public policy to exclude a permissive passenger from uninsured motorist coverage based on the "reasonable belief" exclusion. *Id.* ¶ 17.

¶ 38    The exclusion at issue here, however, related to the policy's liability coverage, not uninsured motorist coverage, and a later case issued by another panel of this court distinguished *Fry* on this basis. See *United Equitable Insurance Co. v. Longmire*, 2019 IL App (1st) 181998, ¶ 51 (affirming summary judgment in favor of the insurer and finding that the insurer for an owner of vehicle that was operated by an unlicensed motorist at the time of an accident was permitted to exclude liability coverage under the policy's reasonable belief exclusion, further finding *Fry* distinguishable because "the [insurance] policy provision at issue is not an uninsured motorist provision"). Because the reasonable belief exclusion in this case was applied to exclude liability coverage for Baker, the driver, and not uninsured motorist coverage for a passenger, we are unpersuaded by Robinson-Dock's reliance on *Fry*.

¶ 39    Moreover, the public policy at issue here is explicitly set out by the Illinois legislature in the Graduated Licensing statute. Specifically,

> "[t]he purpose of the Graduated Licensing Program is to develop safe and mature driving
> habits in young, inexperienced drivers and reduce or prevent motor vehicle accidents,
> fatalities, and injuries by:
>
>> (1) providing for an increase in the time of practice period before granting
>> permission to obtain a driver's license;

16

(2) strengthening driver licensing and testing standards for persons under the age of 21 years;

(3) sanctioning driving privileges of drivers under age 21 who have committed serious traffic violations or other specified offenses; and

(4) setting stricter standards to promote the public's health and safety." 625 ILCS 5/6-107(a) (West 2016).

¶ 40    As the above provisions make clear, the graduated licensing program is intended to prevent young, graduated license holders from operating motor vehicles under conditions that increase the risk of accidents, like the one that occurred here. Accordingly, we reject Robinson-Dock's claim that the application of the reasonable belief exclusion in this case violates public policy.

¶ 41    Finally, Robinson-Dock alleges that the reasonable belief exclusion is ambiguous and that it should be deemed unenforceable. As best we can glean, Robinson-Dock appears to contend that an ambiguity arises because the policy defines an "insured" differently in the section regarding liability coverage than it does in the section regarding uninsured motorist coverage. Robinson-Dock contends that he is an insured under the policy's uninsured motorist coverage,[1] and UEI

---

[1]In response to Robinson-Dock's argument, UEI notes that Robinson-Dock did not claim that he is entitled to uninsured motorist benefits under the policy in the trial court and that any argument that he is entitled to such benefits is forfeited. At oral argument, counsel for Robinson-Dock acknowledged that uninsured motorist coverage is not at issue in this case. To the extent that Robinson-Dock's appellate arguments can be read to assert that summary judgment was improperly granted because he had a claim for uninsured motorist coverage, such claim is both forfeited and abandoned. *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8 ("It is well-settled law in Illinois that issues, theories, or arguments not raised in the trial court are forfeited and may not be raised for the first time on appeal.").

17

cannot deny him coverage as an insured under the policy's liability coverage. Robinson-Dock argues that the "disparate definitions of an 'insured' " show that the policy is "ambiguous" and the reasonable belief exclusion should be deemed unenforceable.

¶ 42    We are unaware of any requirement that the definition of an "insured" in a policy's sections involving liability coverage and uninsured motorist coverage must be identical, or why a difference in such definitions would cause an ambiguity. Moreover, and as explained above, whether Robinson-Dock is an "insured" under the policy's liability coverage is not relevant, and he has not been denied liability coverage. Our supreme court has previously found no ambiguity in the reasonable belief exclusion as to unlicensed drivers in *Founders*, and Robinson-Dock has provided no authority to alter that conclusion in this case as to a driver who is driving outside the conditions of his or her license.

¶ 43    In sum, Baker held a graduated driver's license, which provides conditions for the operation of a motor vehicle by a graduated license holder, and he was operating the vehicle in violation of those conditions. After being presented with facts showing that Baker was not legally entitled to operate the vehicle at the time of the accident, Robinson-Dock provided no facts from which one could conclude that Baker, who had not appeared and had been held in default, had a reasonable belief that he was entitled to do so. Accordingly, summary judgment was properly granted, and the policy's reasonable belief exclusion bars coverage. Our holding is strictly limited to the specific facts presented by this appeal.

¶ 44    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 45    Affirmed.

**No. 1-21-0525**

| | |
|---|---|
| **Cite as:** | *United Equitable Insurance Co. v. Calhoun*, 2022 IL App (1st) 210525 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-7056; the Hon. Sophia Hall, Judge, presiding. |
| **Attorneys for Appellant:** | John P. Brattoli and Joseph L. Planera, of Joseph L. Planera & Associates, of Chicago Heights, for appellant. |
| **Attorneys for Appellee:** | John G. Covert, of Llorens Law Group, Ltd., of Chicago, for appellee. |