# Illinois Official Reports

## Appellate Court

---

### *Ladao v. Faits*, 2019 IL App (1st) 180610

---

| | |
|---|---|
| Appellate Court Caption | RONALD LADAO, Plaintiff-Appellee, v. LAUREN FAITS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-18-0610 |
| Filed<br>Modified upon<br>denial of rehearing | February 19, 2019<br><br>April 23, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-004625; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Mudd Law Offices, of Chicago (Charles Lee Mudd Jr., Michelle A. Kuipers, and Nick Vogel, of counsel), for appellant.<br><br>Richard E. Steck and Associates, of Chicago (Richard E. Steck, of counsel), for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Justices Lavin and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Lauren Faits, appeals from a judgment entered in favor of plaintiff, Ronald Ladao, following a jury trial on plaintiff's claims of libel and false light. On appeal, defendant argues that the trial court erred in (1) failing to instruct the jury on her affirmative defenses of protected opinion and substantial truth, (2) giving an incorrect instruction on abuse of qualified privilege, (3) denying her motion for judgment notwithstanding the verdict on the issue of whether plaintiff presented sufficient evidence that defendant abused her qualified privilege, (4) failing to rule during summary judgment on whether defendant's statements constituted protected opinions, and (5) allowing plaintiff to recover damages on both his libel claim and his false light claim. For the reasons that follow, we affirm.

¶ 2                                         BACKGROUND

¶ 3     In his first amended complaint, plaintiff alleged that in 2016 defendant published several false and defamatory statements about him in a post on her blog, "Geek Girl Chicago." The blog post at issue, which was attached to plaintiff's first amended complaint, stated that in 2003, defendant, then a minor, attended an anime cosplay[1] convention in Chicago. The post then went on to describe the following incident:

> "Thirteen years ago, I was under 18—a minor. I was attending an anime convention in the Chicago area. A group of cosplayers, including myself, headed up to a hotel room to change out of our costumes. We were followed. While we were undressing, a photographer began slamming into our room's *locked* door in an attempt to break in. The room had one of those sliding locks, which broke open under the force. The photographer rushed in with a camera, attempting to get nude photos and/or video of underage cosplayers.

> This photographer's name was Ron 'Soulcrash' Ladao.

> From the start, I was absolutely clear about how wrong this was. Amidst girls' screaming of 'No!' and 'What is wrong with you?' and 'Go away!' I made it clear that this act was unacceptable. I threatened to call the police if he did not immediately leave us alone. He left, but not without grinning and calling me a rude name because I had touched his camera to point it away from the girls." (Emphasis in original.)

In the post, defendant described plaintiff's actions as "sexual assault."

¶ 4     The allegedly defamatory statements at issue on this appeal were that plaintiff "rushed in[to a hotel room] with a camera, attempting to get nude photos and/or video of underage [girls]" and that "[t]his was a sexual assault."[2] Plaintiff alleged that these statements

---

[1]"Anime" is defined as "a style of animation originating in Japan that is characterized by stark colorful graphics depicting vibrant characters in action-filled plots often with fantastic or futuristic themes." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/anime (last visited Feb. 13, 2019) [https://perma.cc/PDW8-UEUX]. "Cosplay" is "the activity or practice of dressing up as a character from a work of fiction (such as a comic book, video game, or television show)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/cosplay (last visited Feb. 13, 2019) [https://perma.cc/4R5P-5EJS].

[2]Plaintiff's first amended complaint also included other allegedly defamatory statements that appear to have been included simply to provide context and preserve any claim of error related to the

constituted libel *per se* because they accused him of conduct that was damaging to his reputation as a professional photographer and videographer and because they accused him of criminal conduct. Plaintiff also alleged that these statements placed him in a false light. As a result of these statements, plaintiff alleged, he suffered harm to his reputation and career, humiliation, and emotional distress.

¶ 5        Defendant moved for summary judgment on both counts of the first amended complaint. In her motion, defendant argued that her statements were protected by a qualified privilege and she did not abuse that privilege. She also argued that her statements were protected opinion, substantially true, or should be considered rhetorical hyperbole. After briefing on the motion, the trial court issued an order denying defendant's motions as to both counts of the first amended complaint. More specifically, the trial court held that although defendant's statements were subject to a qualified privilege, there existed a genuine issue of material fact regarding whether defendant abused that privilege. The trial court also found that defendant failed to carry her burden of proving that, as a matter of law, her statements were protected opinions, hyperbole, or substantially true.

¶ 6        Thereafter, the matter proceeded to a jury trial. At trial, plaintiff testified that he attended the 2003 convention both as a participant and as a staffer taking videos of some of the events. That morning, defendant, who plaintiff knew through Internet forums, had stored her belongings in plaintiff's hotel room. After the convention was over, plaintiff, defendant, and a group of others went back to plaintiff's hotel room so that defendant and some others could change out of their costumes. Two males remained in the room with defendant and others while defendant and the others changed, but plaintiff was outside of the hotel room. Plaintiff testified that he thought it would be a good prank to open the door to the hotel room while they were in there. In the process of doing so, he broke the lock of the hotel room. The guys that were in the room with defendant laughed. Plaintiff then shut the door and left.

¶ 7        Plaintiff denied that he ever tried to get any nude photos or videos of the people inside the hotel room. He also denied slamming into the door of the hotel room and testified that, instead, he used his key to open the door and only pushed the door enough to surprise the room's occupants. He further denied hearing anyone threatening to call the police or calling him a name.

¶ 8        Plaintiff also introduced a video of the incident at issue. Although this video was played for the jury as evidence, it was not included in the record on appeal.

¶ 9        Plaintiff went on to testify that in the years following the 2003 incident, he and defendant had positive interactions, including seeing each other at conventions and being friends on Facebook. He also testified that defendant had used some of his photography work on her blog. During those interactions, there had been no mention of the 2003 incident.

¶ 10        Since defendant's blog post regarding the 2003 incident, plaintiff had not received much independent photography work and he had been excluded from some events.

¶ 11        During her testimony, defendant testified that she did not recall any arrangement with plaintiff to store her belongings in his hotel room during the convention, although he did agree to allow her group to use his room to change out of their costumes. Defendant testified that

_____

trial court's dismissal of those statements on plaintiff's initial complaint. As the parties agree that the statements currently at issue are limited to those quoted above, we need not consider the other statements in the first amended complaint.

after plaintiff left the hotel room, the door burst back open so hard that the lock broke. At that moment, defendant was partially undressed and holding clothes up to cover herself. She also testified that because she knew that plaintiff had a camera, she was worried that someone in the room would be hurt or raped.

¶ 12        When questioned about the video shown to the jury, defendant testified that although plaintiff did not literally follow the group to the hotel room, he did join them on their way to the room. She also acknowledged that plaintiff was not holding a camera when he entered the room, but she believed that the video showed him slamming against the door and attempting to rush into the room. Although he opened the main lock with his key, he broke the chain lock when he entered the room. Defendant admitted that the video played for the jury did not contain any screaming and that it did not depict her saying anything after plaintiff entered the room. It also did not show plaintiff calling defendant a rude name. Nevertheless, defendant testified that after seeing the video played for the jury, she still believed that what she wrote was true.

¶ 13        Defendant further testified that she did not claim that the blog post was anything other than her personal opinion and that, although her memory was not 100% accurate at the time she wrote the post, she did not lie about any of the events that she remembered. She believed at the time of writing, and still believed at the time of trial, that plaintiff was trying to get photographs of nude underage individuals. She also still believed that plaintiff's actions constituted sexual assault because he entered the room knowing that people were undressing and because he did not turn off the camera.

¶ 14        Defendant admitted that following the 2003 incident, she continued to interact with plaintiff, but testified that she kept all interactions professional and only interacted with him to the extent that she could not get the photographs she needed elsewhere and where any face-to-face contact would be minimal.

¶ 15        She testified that she published the post with the purpose of specifically identifying plaintiff; she could have written the post without identifying plaintiff. She denied, however, that her purpose was to convince others not to hire plaintiff or to prevent him from photographing events. Defendant acknowledged that she did not do any research or investigation into the incident or the accuracy of her recollection before publishing her blog post. She also acknowledged that she never took down the post or apologized to plaintiff for any of its contents, although she did write a follow-up post following the release of the video of the incident to clarify that her recollection was "shaky" on some of the details.

¶ 16        Following closing arguments, the matter was submitted to the jury. After deliberations, the jury returned a verdict in favor of plaintiff on both counts. With respect to plaintiff's claim for libel, the jury awarded plaintiff $65,000 in compensatory damages and $20,000 in punitive damages. On plaintiff's claim for false light, the jury awarded plaintiff $5000 in compensatory damages and $20,000 in punitive damages.

¶ 17        Defendant then filed a motion for judgment notwithstanding the verdict. In it, she argued plaintiff had failed to prove that she had abused her qualified privilege, the trial court failed to instruct the jury on her affirmative defenses of protected opinion and substantial truth, the trial court misstated the law on the abuse of qualified privilege, the trial court failed to rule on defendant's motion for summary judgment regarding whether her statements were opinions or statements of fact, and plaintiff should not be allowed to recover damages for both libel and false light. Following briefing and a hearing on defendant's motion, the trial court denied it,

and defendant filed this timely appeal.

¶ 18                                    ANALYSIS
¶ 19       On appeal, defendant argues that the trial court erred in (1) failing to instruct the jury on her affirmative defenses of protected opinion and substantial truth, (2) giving an incorrect instruction on abuse of qualified privilege, (3) denying her motion for judgment notwithstanding the verdict on the issue of whether plaintiff presented sufficient evidence that defendant abused her qualified privilege, (4) failing to rule during summary judgment on whether defendant's statements constituted protected opinions, and (5) allowing plaintiff to recover damages on both his libel claim and his false light claim. We address each of these contentions in turn.

¶ 20                                 Jury Instructions
¶ 21       Defendant first argues that the trial court erred in failing to instruct the jury on her affirmative defenses of protected opinion and substantial truth and in incorrectly instructing the jury on abuse of qualified privilege. We conclude that defendant has waived review of these contentions, because she failed to object to the jury instructions given by the trial court and the trial court's failure to give defendant's requested objections.

¶ 22       Generally, the determination of which jury instructions are to be given falls within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Baumrucker v. Express Cab Dispatch, Inc.*, 2017 IL App (1st) 161278, ¶ 63. To preserve any complaint regarding the trial court's determinations on jury instructions or verdict forms, a party must (1) make a specific objection during the jury instruction conference or when the instructions are read to the jury and (2) submit a remedial instruction or verdict form to the trial court. *Id.* Failure to do so results in waiver of the issue on appeal. *Id.*; *Motsch v. Pine Roofing Co.*, 178 Ill. App. 3d 169, 176 (1988) (defendants' contention that the trial court failed to instruct the jury on an affirmative defense and on other requirements of the plaintiff's claim was waived by the defendants' failure to object in the trial court and to submit a proper instruction to the trial court). In addition,

>      "[t]o raise an issue on appeal concerning the giving of or the failure to give an instruction, the appellant must provide the reviewing court with the content of the instruction conference establishing that the appellant there raised the argument that he advances on appeal or else he is barred from raising it in the reviewing court." *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 350 (1980).

See *Aguinaga v. City of Chicago*, 243 Ill. App. 3d 552, 575 (1993).

¶ 23       Here, the record on appeal contains two discussions on jury instructions between the trial court and the parties. Both of these discussions took place on the last day of trial, and it appears from the transcript that they do not constitute the entirety of the jury instruction conference. First, only a few instructions and a single verdict form were addressed during the discussions contained in the record on appeal; the record does not include a discussion of all the instructions that were proposed by the parties or ultimately given. Specifically, there are no references in the discussions in the record to defendant's request for instructions on protected opinion and substantial truth or to defendant's complaint regarding the wording of the instruction on abuse of the qualified privilege. Second, the trial court stated on the record that it

had "made an effort over several days" to get the jury instructions done and was "trying to hold a jury instruction conference, fourth try." From these statements, it appears that the jury instruction conference was conducted piecemeal over the course of several hearings held prior to and during the trial. Despite this, as mentioned above, the only transcripts included in the record on appeal are those of the two jury instruction discussions held on the last day of trial; there are no transcripts of the other hearings where jury instructions were discussed.

¶ 24    Nowhere in the transcripts we have are there objections by defendant to the trial court's abuse of qualified privilege instruction or its failure to include an instruction on protected opinions or substantial truth. If defendant objected on these issues during some other discussion on the jury instructions, we have no way of knowing because not all of the transcripts were included in the record on appeal. Because defendant has failed to provide us with a sufficient record to demonstrate that she registered the necessary objections, we must conclude that she has waived her contentions regarding the jury instruction given by the trial court. See *Brown*, 83 Ill. 2d at 350.

¶ 25    In her petition for rehearing, which we deny, defendant contends that the two discussions on jury instructions that are in the record do, in fact, represent the entirety of the discussions on the jury instructions and verdict forms. We find it difficult to reconcile the trial court's statements that it had attempted on four occasions over the course of "several days" to hold a jury instruction conference with the notion that the two transcribed discussions that were held on the last day of trial constituted the entirety of jury instructions discussions. Nevertheless, even if we accept defendant's contention as true, it only strengthens our conclusion that defendant waived her claims of error regarding the jury instructions by failing to object. Whereas before there remained the possibility that defendant objected during a portion of the jury instruction conference not included in the record, if the discussions on the record constitute the entirety of the jury instruction conference, then there is no question that defendant failed to object and, therefore, waived any claim of error with respect to the jury instructions.

¶ 26    We also observe that, in the record, there were references by the trial court and the parties to lists of disputed and undisputed instructions. The record on appeal, however, does not contain these lists of proposed instructions. Although the common law record contains a number of jury instructions, they are not clearly identified as being proposed by one party or the other, nor are they marked as given or refused. What is clear from the record is that defendant's proposed instructions on protected opinion, substantial truth, and abuse of the qualified privilege appear only as exhibits attached to her motion for judgment notwithstanding the verdict. Given that there is no complete set of defendant's proposed jury instructions in the record and given that the portions of the jury instruction conference that appear in the record do not indicate the substance of defendant's proposed instruction, we cannot say that defendant tendered the required remedial instructions for consideration. See *Baumrucker*, 2017 IL App (1st) 161278, ¶ 63.

¶ 27    In her petition for rehearing, defendant attempts to avoid application of the waiver rule in this respect by contending that the record demonstrates that she did have a complete set of jury instructions and proposed verdict forms to submit to the trial court, but the trial court did not request that they be filed or allow defendant to file them. The record does not support this contention. Rather, the record indicates that the trial court requested and defendant submitted a set of proposed instructions to the trial court. There is certainly nothing in the record to support

defendant's contention that the trial court would not allow her to file her proposed instructions and verdict forms. It appears, instead, that despite tendering a set to the trial court, defendant never made any attempt to properly file them or ensure that they were placed in the file after they were submitted to the trial court. To the extent that defendant did submit her proposed instructions for filing and they were inadvertently omitted from the file or the record on appeal, defendant failed to make any effort to supplement the record on appeal. Defendant was surely aware of this procedure, as she sought to have the record supplemented with other documents. Accordingly, we see no reasons to alter our conclusion that the record before us does not demonstrate that defendant submitted the necessary remedial instructions.

¶ 28    Defendant argues that her counsel did, in fact, attempt to object but that the trial court was impatient with defense counsel, thereby making any attempt at objecting futile. From our review of the transcript in the record, it appears that the trial court's frustration with defense counsel was justified and resulted from defense counsel's failure to articulate legal objections to plaintiff's proposed instructions, both during trial and on previous occasions. Specifically, when the trial court asked defense counsel for objections on some of the plaintiff's proposed instructions or verdict forms, defense counsel responded simply that they had submitted alternate instructions or forms but could not articulate a legal basis for choosing defendant's instructions or forms over plaintiff's. In addition, as mentioned, the trial court indicated that it had attempted to discuss the jury instructions with the parties on other occasions, but that those attempts were not fruitful because of defense counsel's failure to articulate their legal positions and follow the trial court's directives on preparing for the jury instruction conference. Based on this, we disagree that it would have been futile for defendant to attempt to object but instead conclude that defendant failed to take advantage of her opportunities to object.

¶ 29    Because defendant has failed to present a sufficient record demonstrating that she adequately preserved any error with respect to the jury instructions, we must conclude that she has waived these contentions. See *Brown*, 83 Ill. 2d at 350; see also *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 30                              Abuse of Qualified Privilege

¶ 31    Defendant next argues that the trial court erred in denying her motion for judgment notwithstanding the verdict, because plaintiff failed to present sufficient evidence at trial that defendant abused her qualified privilege. As defendant has failed to present a sufficient record on which we may review this claim, we must conclude that the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict in this respect. *Foutch*, 99 Ill. 2d at 391-92.

¶ 32    In ruling on a motion for judgment notwithstanding the verdict, the trial court must view the evidence presented at trial in the light most favorable to the nonmovant and should grant the motion only if that evidence " 'so overwhelmingly favors [a] movant that no contrary verdict based on that evidence could ever stand.' " *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006) (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). "In other words, a motion for judgment *n.o.v.* presents 'a question of

law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the [plaintiff's] case.' " *Id.* (quoting *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 311 (1942)). A trial court should not grant judgment notwithstanding the verdict if " 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' " *Id.* (quoting *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 351 (1995)). We review *de novo* the trial court's decision whether to grant or deny a motion for judgment notwithstanding the verdict. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37.

¶ 33    Where a qualified privilege exists, a statement that might otherwise be considered defamatory is protected due to the circumstances under or occasion on which it was made. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 24 (1993). "This privilege is based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Id.* Qualified privileges exist in situations where there is involved an interest held by the person publishing the statement, the person to whom the matter is published, some other third person, or the public. *Id.* at 29. Typically, in the absence of a qualified privilege, a defamation plaintiff is only required to show that the defendant was negligent in making the allegedly defamatory statement. *Id.* at 24. Where a defendant demonstrates the existence of a qualified privilege for making the statement, however, there is a heightened standard of proof, and the plaintiff must demonstrate that the defendant abused the privilege. To do so, the plaintiff must demonstrate that the defendant had "a direct intention to injure another, or *** a reckless disregard of [the defamed party's] rights and of the consequences that may result to him." (Internal quotation marks omitted.) *Id.* at 30. Our supreme court has stated that whether a defendant abused the privilege is a factual inquiry that examines whether the defendant acted in good faith in making the statement, the statement was properly limited in its scope, and the statement was sent only to the proper parties. *Id.* at 27. In addition, an abuse of the privilege may consist of "any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter,[3] limit the scope of the material, or send the material to only the proper parties." *Id.* at 30.

¶ 34    The record reveals that there exists a video of the 2003 incident on which defendant's alleged defamatory statements are based. This video was played for the jury at trial, and the parties were questioned extensively about it during their trial testimony. During closing arguments, both parties referred to and relied on what was depicted in the video to make their arguments as to whether plaintiff carried his burden of proof at trial. Despite all of this, defendant failed to include the video in the record on appeal.[4]

¶ 35    Defendant's failure to include the video in the record on appeal precludes us from conducting any meaningful review of the trial court's denial of defendant's motion for

---

[3]Defendant takes issue with the proposition that a failure to investigate the truth of the statement may evidence recklessness, but we need not address defendant's concerns in this respect because our decision does not depend on its inclusion as an example of recklessness.

[4]We note that plaintiff's brief indicates that the video is available to access on YouTube. While this may be true, our review is limited to what is in the record, and we have no way of ascertaining whether the video available online is the same as the one shown to the jury.

judgment notwithstanding the verdict on the issue of whether plaintiff carried his burden of demonstrating that defendant abused her privilege. Specifically, the standard for ruling on a motion for judgment notwithstanding the verdict required the trial court to evaluate all of the evidence presented at trial in the light most favorable to the plaintiff and to draw all reasonable inferences from that evidence in favor of the plaintiff. *York*, 222 Ill. 2d at 178. To succeed on her motion, defendant had to demonstrate that there was a total lack of evidence of abuse of the privilege or that the evidence was so overwhelmingly in her favor that the jury's verdict could not stand. *Id.* Central to this analysis is a review of *all* of the trial evidence. Without the ability to review the video—which appears to have been a key piece of evidence—we have no basis on which to determine whether the trial court properly reviewed and weighed the evidence regarding defendant's abuse of the privilege. Because the video captured the incident at issue, it would be integral in determining of whether defendant acted in good faith or with reckless disregard of plaintiff's rights in making her statements.

¶ 36    It is well established law in the state of Illinois that an appellant bears the burden of presenting the reviewing court with a sufficiently complete record to support his or her claim of error. *Foutch*, 99 Ill. 2d at 391. An appellant's failure to provide a complete record to the reviewing court results in the presumption that the trial court's challenged ruling was proper under the applicable law and facts. *Id.* at 392. If any doubts arise from the incompleteness of the record, they will be resolved against the appellant. *Id.* Here, defendant's failure to include the video in the record on appeal creates doubts as to whether there was a lack of evidence on defendant's abuse of her qualified privilege. It also completely precludes any review of her claim of error on the issue. Accordingly, we must conclude that the trial court's denial of defendant's motion for judgment notwithstanding the verdict in this respect was properly granted.

¶ 37    In her petition for rehearing, defendant admits that the video should have been included in the record in appeal because she requested and submitted the entire record on appeal. According to defendant, if the video was not included in the record, there was nothing she could have done to resolve the issue. This is because plaintiff introduced the video at trial, and any version of the video that defendant would submit to supplement the record would not be the same video that was shown to the jury. Defendant's contention is not well taken. First, if the video was part of the trial court record, as defendant acknowledges it should have been but was somehow inadvertently omitted from the record on appeal, defendant could have contacted the clerk of the trial court to locate the video and seek leave from the trial court to supplement the record on appeal. It certainly is not uncommon for documents or exhibits to be inadvertently omitted from the record on appeal; yet the solution is simple, and defendant has offered no explanation why she was unable to resolve the issue. Second, even if the video was somehow omitted from the trial court's file, defendant identifies no reason why she could not have sought the assistance of the trial court and plaintiff's counsel in ensuring that the correct version of the video was made part of the record. In either situation, Illinois Supreme Court Rule 329 (eff. July 1, 2017) provides a simple and straightforward solution:

> "Material omissions or inaccuracies [in the record] may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court ***. Any controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made to conform to the truth."

Because defendant failed to take advantage of this process and resolve the issue of the insufficient record, we are not swayed from our original position that her failure to submit a sufficient record precludes review of her claim.

¶ 38                                     Failure to Rule

¶ 39        Defendant next argues that the trial court erred in failing to rule, during summary judgment, whether defendant's statements constituted protected opinions as a matter of law. There is no dispute between the parties that the issue of whether an alleged defamatory statement is one of opinion or fact is a question of law. See *Hadley v. Subscriber Doe*, 2014 IL App (2d) 130489, ¶ 36. According to defendant, the trial court failed to rule on this issue of law raised in defendant's motion for summary judgment and, instead, viewed it as a question of fact to be determined by the jury. We disagree.

¶ 40        In her motion for summary judgment, defendant asked the court to rule, as a matter of law, that her statements qualified as protected opinions. Accordingly, defendant bore the burden of demonstrating that her statements were protected opinions. See *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933 (2001) ("The burden of proof and the initial burden of production in a motion for summary judgment lie with the movant."). In its order denying defendant's motion for summary judgment, the trial court specifically made the following findings:

> "Here, Faits has not shown that, as a matter of law, she merely stated opinion, hyperbole, or truth."

> "While not as cloaked in insinuation as the publication in *Hadley*, Faits' publication can be reasonably interpreted as a statement of fact; primarily that Ladao was attempting to engage in illegal activity, specifically child pornography."

> "Based on the record before the Court, Faits has not met her burden of showing that there is no question of fact regarding whether the statements made in her blog post constitute opinion, hyperbole, or are substantially true."

From these statements, it is abundantly clear to us that the trial court did, in fact, rule on the question presented by defendant; it found that defendant failed to carry her burden of establishing that her statements were entitled to protection as opinions. The fact that the trial court did not make a strong, affirmative finding that defendant's statements were ones of fact is irrelevant because a statement is either one of fact or one of opinion, hyperbole, or rhetoric. By holding that defendant failed to establish as a matter of law that her statements were opinion, hyperbole, or rhetoric, it necessarily follows that defendant's statements would be treated as statements of fact.

¶ 41        Defendant's belief that the trial court did not rule on this issue is based on the fact that the trial court's order did not include a discussion of the factors to be considered when determining whether a statement is one of opinion or fact. See *Hadley*, 2014 IL App (2d) 130489, ¶ 36 (identifying factors). A trial court, however, is not obligated to provide a detailed discussion of its analysis, and it is not reversible error for the trial court to fail to provide any such discussion. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993). Moreover, we find it absurd that the trial court's failure to provide a play-by-play of its analysis could somehow negate or defeat its clear statement that defendant failed to demonstrate that her statements were protected opinions.

¶ 42    In sum, defendant asked the trial court to hold that her statements constituted protected opinions. As the movant, defendant bore the burden of establishing that she was entitled to such a holding. The trial court clearly found that defendant failed to carry that burden and did not establish that her statements were protected opinions. Defendant makes no contention that the trial court was incorrect in that finding. Thus, we see no basis on which to reverse.

¶ 43                                    Double Recovery

¶ 44    Finally, defendant contends that the jury's award of damages on both libel and false light constitutes impermissible double recovery because plaintiff's claims for libel and false light were based on the same statements. Defendant argues that although a plaintiff may simultaneously pursue claims of defamation and false light, recovery may be had on only one theory. Plaintiff responds that the cases cited by defendant are not binding and that because claims of defamation and false light protect different rights, recovery on both is permitted. We need not resolve this dispute, however, as we conclude that defendant has, once again, waived any claim of error in this respect.

¶ 45    The special verdict form given to the jury permitted the jury to award damages to plaintiff on both his libel and false light claims. Defendant claims that she submitted to the trial court a proposed instruction stating that the plaintiff could not recover on both theories for the same statements, that the trial court rejected her proposed instruction, and that the trial court failed to instruct the jury on this point. The record before us, however, does not support this contention.

¶ 46    As discussed above, defendant failed to provide a complete record of the jury instruction conferences, and we can find no defense objection to the given special verdict form on the basis that it permits double recovery. We also cannot find anywhere in the transcripts before us any discussion of defendant's proposed instruction on double recovery or the trial court's rejection of that instruction. Defendant provides no assistance in our search, as the only record citations provided in support of her contention direct us to the jury instructions that were ultimately given to the jury and her proposed instruction attached as an exhibit to her motion for judgment notwithstanding the verdict. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (requiring the argument section of an appellant's brief to include citations to the pages of the record relied on). Because defendant has failed to demonstrate that she properly preserved this claimed error, we must consider it waived. See *Antol v. Chavez-Pereda*, 284 Ill. App. 3d 561, 570 (1996) (defendant's claim of impermissible double recovery waived where the defendant failed to object to the verdict form allowing double recovery); see also *Baumrucker*, 2017 IL App (1st) 161278, ¶ 63 (to preserve claims of error on jury instructions or verdict forms, a party must make a specific objection during the jury instruction conference or when the instructions are read to the jury and submit a remedial instruction or verdict form to the trial court).

¶ 47    Again, defendant's contention in her petition for rehearing that the jury instruction discussions that appear in the record on appeal constitute the entirety of the jury instruction conference reaffirms our position that she waived any contention regarding double recovery. If the record on appeal contains all of the discussions that were had on the proposed verdict forms, then there can be no question in our minds that defendant did not object to the given verdict form on the basis that it permitted double recovery or propose her own jury instruction on double recovery that the trial court rejected.

¶ 48                                    CONCLUSION

¶ 49            For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 50            Affirmed.