2022 IL App (1st) 211640-U

No. 1-21-1640

Order filed December 30, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MICHAEL BRIGGS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 12432 |
| | ) | |
| SMG FOOD & BEVERAGE, L.L.C., a Pennsylvania | ) | |
| Limited Liability Company, d/b/a Savor Chicago at | ) | |
| McCormick Place, SHAUN BEARD, STEVEN | ) | |
| TAMBORELLO, and MELITA MOORE, | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the summary judgment for defendants in this defamation action. Plaintiff failed to present evidence creating a material issue of fact as to whether defendants abused the qualified privilege.

¶ 2    Plaintiff Michael Briggs filed a defamation action against defendants SMG Food &

Beverage, L.L.C. ("SMG"), Shaun Beard, Steven Tamborello, and Melita Moore. The circuit court

granted summary judgment for defendants. On appeal, plaintiff contends summary judgment was improperly granted because there is a genuine issue of material fact as to whether defendants abused the qualified privilege. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff filed his action on November 15, 2018, alleging that defendants defamed him on or about August 22, 2015. He alleged SMG provided food and catering service at McCormick Place. Beard was senior vice president of SMG managing its McCormick Place operations, Tamborello was an SMG executive, and Moore was a human resources director for SMG. Plaintiff was employed by SMG as a banquet captain, and his duties entailed access to various parts of McCormick Place. He was still employed by SMG when he filed the complaint.

¶ 5     Plaintiff alleged a meeting between management and union representatives on "management and union issues" was held on or about August 22, 2015. Defendants and others attended the meeting, but plaintiff did not. During the meeting, Beard stated, "We have to move the meeting because [plaintiff] is threatening the building because he is a terrorist," and the meeting was moved. Tamborello and Moore repeated Beard's statement during the meeting and stated that plaintiff's security pass for McCormick Place access "needed to be revoked."

¶ 6     The complaint alleged Beard's statement and Tamborello and Moore's repetition of it were factually false and they made their statements either knowing they were false or with reckless disregard for the truth. Plaintiff alleged the statements were defamatory *per se* as they accused him of being a criminal who would engage in criminal activity and impaired his "legitimacy as an employee of" SMG and his performance of his employment duties at McCormick Place. Plaintiff alleged that the statements of Beard, Tamborello, and Moore were motivated by actual malice.

They either knew the statements were false or recklessly disregarded their falsity. Plaintiff also alleged:

"Defendants were then motivated to destroy Plaintiff's credibility with the select group present [at the meeting] because of Plaintiff's then pending employment grievance, the delay of Defendant SMG in resolving said grievance, and Plaintiff's prior admonition that unless said dispute was solved in a reasonable period of time, relief from an independent lawful source would be sought."

Plaintiff further contends defendants had no absolute or qualified privilege to make their statements.

¶ 7    The complaint alleged Beard's statement was intended to be kept confidential to prevent plaintiff from discovering it. He therefore could not reasonably be expected to discover it until someone present at the meeting disclosed it to him on November 25, 2017. Similarly, he alleged he discovered Tamborello and Moore's statements in March 2018 and could not reasonably have discovered them until he investigated Beard's statement.

¶ 8    Plaintiff maintained defendants' statements caused him "severe pain and suffering and humiliation," including "being deprived of access to portions of the McCormick Place facility without explanation," thus hampering his performance of his duties. He alleged the statements of Beard, Tamborello, and Moore were made in the course of their employment by SMG.

¶ 9    Defendants appeared and filed a motion to dismiss the complaint as untimely, as it was filed in 2018 but alleged defamatory statements made in 2015. See 735 ILCS 5/13-201 (West 2018) (one-year limitation period for defamation actions). Defendants argued plaintiff should have

discovered the alleged defamation when his security pass was allegedly revoked in August 2015, denying him access to McCormick Place.

¶ 10    Plaintiff responded to the motion to dismiss, invoking the discovery rule whereby defamation claims accrue only when the plaintiff knew or should have known of the defamatory statement. He claimed he contacted Moore and another person when his pass stopped working, denying him access to portions of his worksite. They assured him access would be restored, and his access was indeed "promptly" restored, thereby eliminating a reason for further inquiry. Plaintiff supported this claim with copies of emails from that time, showing that his access issues arose on September 15, 2015, and were reported and resolved on September 18.

¶ 11    The court granted the motion to dismiss in April 2019, finding plaintiff's defamation claim began to run when his McCormick Place security pass was revoked.

¶ 12    Plaintiff appealed from the dismissal, contending he alleged facts that could support a finding he neither knew nor should have known before November 25, 2017, that wrongful conduct had caused him injury. See *Briggs v. SMG Food & Beverage, LLC*, 2020 IL App (1st) 191723-U, ¶ 2 (unpublished order under Supreme Court Rule 23). This court reversed the dismissal and remanded for further proceedings. *Id*. We found the allegations in plaintiff's complaint and motion response raised an issue of fact as to when he should have known that wrongful conduct caused his pass to fail in September 2015. *Id*. ¶ 12. Being reassured that his pass would work, and then finding that it did work, would keep a reasonable person from investigating further. *Id.*

¶ 13    In October 2020, defendants answered the complaint. They admitted that plaintiff, Beard, Moore, and Tamborello had worked and continued to work for SMG at McCormick Place. They admitted Beard and Moore attended an August 29, 2015, meeting (not August 22 as alleged)

between management and labor representatives. They denied the allegedly defamatory statements were made or repeated at the meeting. They claimed insufficient knowledge about what plaintiff may have been told about the August 2015 meeting in November 2017 or March 2018.

¶ 14    Defendants alleged affirmative defenses: statute of limitations, the allegedly defamatory statements were not made, any statement made "concerning Plaintiff was protected by a conditional, qualified, and/or absolute privilege," and plaintiff failed to mitigate his damages by seeking other income or any award should be reduced by his mitigation. Plaintiff replied to the affirmative defenses, denying them, and asserting that the claim of privilege should be stricken because defendants had not identified any privilege.

¶ 15    Defendants filed a motion for summary judgment in July 2021. They again argued the complaint was untimely. They challenged plaintiff's assertion that he could not have learned of remarks from the August 2015 meeting because it was "confidential" or limited to attendees. They claimed plaintiff had reason to know of any remarks by September 2015. Defendants argued plaintiff had "no admissible evidence that a false statement was made about him." He never heard any defendant make the alleged remarks, and they all denied they did. Moreover, coworker Dexter Golden allegedly told plaintiff about the statements but was not at the August 2015 meeting so his testimony would be hearsay. Defendants argued Beard's alleged statement that plaintiff was a terrorist was vague opinion, citing cases finding unfavorable assessments or evaluations of employees to be unactionable. Lastly, they argued qualified privilege protected statements they made as plaintiff's employer and its agents, and privilege could be overcome only if it was abused.

¶ 16    In their motion, defendants asserted Tamborello did not attend the August 2015 meeting. The meeting was moved as the scheduled room had fruit flies. Also, "Beard learned" plaintiff left

a voicemail a few days earlier stating in part, "So either you have an answer for me later today or tomorrow I play war." The meeting was moved for that reason as well, but defendants did not discuss that reason at the meeting. Beard denied making the statement alleged in the complaint. Moore and Tamborello denied saying plaintiff was a terrorist or hearing such a statement.

¶ 17    Defendants' motion claimed plaintiff had complained of coworkers referring to him in September 2015 as "McCormick's favorite terrorist." When asked in a deposition who had made that comment, plaintiff named a coworker who was not a defendant in this case despite plaintiff asserting the remark was defamatory. Moreover, plaintiff did not hear any of the alleged defamatory statements but allegedly was told of them in November 2017 by an unidentified coworker who attended the August 2015 meeting. In his deposition, he named Golden as that person. However, defendants claimed, Golden was not at the August 2015 meeting. Plaintiff allegedly did not identify who heard Tamborello and Moore call him a terrorist.

¶ 18    Attached to defendants' motion were the July 2021 signed declarations of Beard, Tamborello, and Moore.

¶ 19    Beard declared Peggy Gilkin, SMG's director of human resources, told him on August 24, 2015, that plaintiff had left a voicemail message at SMG's headquarters concerning his schedule. Gilkin sent Beard an email transcribing plaintiff's message, which ended "So either you have an answer for me later today or tomorrow. I play war." Beard and Moore attended the August 29 meeting with union representatives. Before the meeting, Beard conferred with Moore about "whether she felt safe with conducting the labor-management meeting in the building, or if there was any reason to acknowledge" plaintiff's message. However, "Moore felt safe and did not believe the message was threatening." The meeting was held without issue but was moved from

the east side of McCormick Place to the west side because the east side "rooms persistently have fruit fly and HVAC issues." Beard denied saying "We have to move the meeting because [plaintiff] threatened the building because he is a terrorist" or the like at the meeting or otherwise.

¶ 20    Tamborello declared that, as general manager for SMG at McCormick Place, he was acquainted with plaintiff as a banquet captain and knew of his grievance in the fall of 2015. Tamborello did not attend the August 2015 meeting but was aware it was held on the west side of McCormick Place and Beard and Moore attended for SMG. Tamborello denied making a statement, or hearing Beard make a statement, to the effect the meeting had to be moved because plaintiff was a terrorist who was threatening the building.

¶ 21    Moore declared that, as SMG's human resources director at McCormick Place, she was acquainted with plaintiff as a banquet captain. She and Beard attended the August 2015 meeting with union representatives. She and Beard decided to move the meeting from the east to the west side of McCormick Place due to fruit flies in the former location and Beard learning of a threatening voicemail message from plaintiff a few days earlier. Moore told the union representatives that the meeting was being moved but did not tell them why. Moore denied making a statement, or hearing Beard make a statement, that the meeting had to be moved because plaintiff was a terrorist who was threatening the building. Moore claimed SMG payroll records showed Golden did not attend the August 2015 meeting.

¶ 22    Also attached to defendants' summary judgment motion was a transcript of plaintiff's February 2021 deposition. He testified he worked for SMG until February 2021. He acknowledged leaving the voicemail message but did not recall saying "I play war" at the end of the message and did not believe he made the remark "like that." He did not attend the August 2015 meeting. Golden

told him in November 2017 about the allegedly defamatory remarks. Golden "said that he heard that they called me a terrorist, that I was threatening the building," and "they moved the meeting." Plaintiff believed Golden attended the August 2015 meeting.

¶ 23    Plaintiff also spoke with union officials Mark Byrne and Robert Haywood, whom he believed attended the meeting. Byrne emailed plaintiff a list of meeting attendees. Plaintiff "talked to some of them, and they told me the same thing." Byrne also told him Tamborello and Moore repeated Beard's "terrorist" remark. In late September 2015, one of the meeting attendees made a joke that plaintiff was McCormick Place's "favorite terrorist." Plaintiff did not ask what the coworker meant until he learned of the meeting comments. He also did not name the coworker as a defendant. Plaintiff did not lose any paid worktime because of the issue with his security pass.

¶ 24    Plaintiff responded to the summary judgment motion, arguing that none of defendants' theories – limitations, lack of admissible evidence, opinion, and qualified privilege – was a valid basis for summary judgment. Citing attached statements from Golden and Haywood that they attended the August 2015 meeting and defendants made the remarks at issue to attendees, plaintiff claimed there were material issues of fact barring summary judgment. Plaintiff argued a coworker making a joke about him being a terrorist did not inform him of earlier statements made by SMG management in apparent earnest during a meeting he did not attend. Plaintiff also argued the coworker's remark had no consequences while defendants' statements did.

¶ 25    As to whether Beard's remark was an opinion, plaintiff argued the context showed otherwise. He pointed to the meeting moving due to the comment, and to his allegation that Beard made the remark out of malice due to plaintiff's grievance. As to qualified privilege, plaintiff argued the voicemail remark attributed to him, including "I play war," was not reasonably

interpreted as a threat of physical violence. It expressed his frustration with how long it was taking to resolve his grievance and his intent to vigorously pursue the grievance if not resolved soon.

¶ 26    Plaintiff also argued defendants acted inconsistently with qualified privilege. He argued reckless conduct overcoming privilege consists of not investigating the truth of a statement before publishing it or not properly limiting its publication. Defendants made no investigation of whether he presented a physical threat. Also, they made the "terrorist" remark to all attendees regardless of whether they could choose to move the meeting or could improve security.

¶ 27    Attached to the response were signed statements by plaintiff, Golden, and Haywood.

¶ 28    Plaintiff stated he did not know any defendant had called him a terrorist before November 2017, when Golden told him the August 2015 meeting was moved and Beard said to all present that the meeting had to be moved because plaintiff was a terrorist. Plaintiff's voicemail message was merely an assertion he would vigorously pursue his grievance, not a threat of violence. He denied threatening anyone or performing any threatening act. He took a coworker's September 2015 reference to him as everyone's favorite terrorist as a joke, not an earnest allegation.

¶ 29    Golden and Haywood each averred that, "on [or] about August 22, 2015," they attended a labor-management meeting. At the beginning of the meeting, Beard told the attendees the meeting would be moved because plaintiff was a terrorist, and the meeting was then moved. Haywood said Tamborello and Moore attended the meeting and made statements similar to Beard. Golden said he did not mention the August 2015 occurrence to plaintiff until November 2017.

¶ 30    Defendants replied in support of their summary judgment motion, arguing the statements of Golden and Haywood "compel a finding that the alleged remark is unactionable as opinion." By their accounts, "no factual detail was given to provide context for Beard's alleged remark that

Briggs was a terrorist." Defendants cited cases for the proposition that characterizations such as terrorist, fascist, and troublemaker are unactionable hyperbolic opinion. They also argued plaintiff's evidence did not refute that he "was on notice of being called a terrorist and having his security access to the workplace suspended in September 2015" but failed to take legal action for over three years. The 2018 complaint was untimely filed, as plaintiff should have known in September 2015 about being called a terrorist, which should have prompted him to investigate.

¶ 31   The trial court granted defendants' motion for summary judgment in November 2021. It found plaintiff "failed to establish a genuine issue of material fact as to whether defendants' alleged defamatory statements are protected by qualified privilege." While noting the additional argument on limitations that a coworker called plaintiff a terrorist in September 2015, the court also noted this court's decision and declined to dismiss the case as untimely. The court did not determine whether Beard's alleged remark was opinion, finding it would be subject to qualified privilege even if it was defamatory. The court agreed that defendants had to take plaintiff's "I play war" comment seriously as a threat, and moving the meeting was a reasonable response to a perceived threat. The court found Beard's remark was made to only those who needed to know and plaintiff provided no evidence that defendants abused the privilege. This appeal followed.

¶ 32                                    II ANALYSIS

¶ 33   On appeal, plaintiff contends summary judgment for defendants was improperly granted because there is a genuine issue of material fact as to whether their claimed qualified privilege has been abused. Defendants respond summary judgment was appropriate because the court did not err in finding qualified privilege and because there are alternative grounds for summary judgment: the allegedly defamatory statements were opinion, and the action was untimely filed.

¶ 34    Both plaintiffs and defendants may file for summary judgment. 735 ILCS 5/2-1005(a), (b) (West 2020). It should be granted only where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Id.* § 2-1005(c). A genuine issue of material fact precluding summary judgment exists where material facts are disputed, or reasonable persons may draw different inferences from undisputed facts. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15.

¶ 35    Because summary judgment is a drastic means of disposing of litigation, it should be granted only where the movant's right is clear and free from doubt. *Id.* Thus, we must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the non-movant. We review *de novo* a grant of summary judgment. *Id.* We may affirm a summary judgment on any basis appearing in the record, regardless of whether the trial court relied upon that basis. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34.

¶ 36    Summary judgment for the defendant is appropriate if a plaintiff fails to establish any element of his or her cause of action. *Lewis*, 2020 IL 124107, ¶ 15. A plaintiff opposing summary judgment cannot simply rely on the allegations of his or her complaint to raise a genuine issue of material fact but must affirmatively controvert evidence presented by the moving party. *United Equitable Insurance Co. v. Calhoun*, 2022 IL App (1st) 210525, ¶ 29. To state a claim for defamation, a plaintiff must show (1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused plaintiff damages. *Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 28. A statement is defamatory if it harms a person's reputation to the extent that it lowers the person in the eyes of the community or deters the community from associating with the person. *Id.*

¶ 37    A defamatory statement is not actionable if the defendant can show it is (1) reasonably capable of an innocent construction, (2) an expression of opinion, or (3) subject to a privilege. *Dobias v. Oak Park River Forest High School District 200*, 2016 IL App (1st) 152205, ¶ 56. A qualified privilege exists where a statement that may otherwise be considered defamatory is protected due to the circumstances or occasion of its making. *Ladao v. Faits*, 2019 IL App (1st) 180610, ¶ 33 (citing *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 24 (1993)). "This privilege is based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Kuwik*, 156 Ill. 2d at 24. Qualified privileges exist when an interest is "held by the person publishing the statement, the person to whom the matter is published, some other third person, or the public." *Ladao*, 2019 IL App (1st) 180610, ¶ 33.

¶ 38    Neither party disputes that there is a genuine issue of material fact regarding whether defendants made the statements in the meeting. While Beard, Tamborello, and Moore deny in their statements that they made the defamatory remarks at issue, plaintiff has presented Golden and Haywood's statements to the contrary. Similarly, while the statements of Beard and Moore establish there were fruit fly and ventilation problems with the original meeting venue, Moore's statement established that she and Beard discussed plaintiff's voicemail and chose to move the meeting at least in part because of it.

¶ 39    Rather, the issue on appeal is whether the statements, if made, were actionable. Plaintiff does not dispute whether the statements meet the elements for a qualified privilege. Rather, he contends the statements are actionable because he has shown a genuine issue of material fact as to whether any qualified privilege was abused. Defendants challenge that contention and contend that

opinion and untimeliness are valid independent grounds for affirming their summary judgment. We turn first to the contention that there is a genuine issue of material fact as to whether defendants abused their claimed qualified privilege.

¶ 40    While the general rule is a defamation plaintiff need only show that the defendant was negligent in making the allegedly defamatory statement, when a defendant shows the existence of a qualified privilege for making the statement, the plaintiff must show the defendant abused the privilege. *Ladao*, 2019 IL App (1st) 180610, ¶ 33. The privilege is abused when the defendant intended to injure someone or showed reckless disregard for the plaintiff's rights and the consequences that may result to the plaintiff. *Kuwik*, 156 Ill. 2d at 30. Whether a defendant abused the privilege is a factual inquiry examining whether the defendant acted in good faith in making the statement, the statement was properly limited in its scope, and the statement was made only to the proper parties. *Id.* at 27. Abuse of the privilege may consist of reckless acts showing a disregard for the plaintiff's rights, "including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Id.* at 30.

¶ 41    Here, we agree with the trial court that plaintiff failed to establish a genuine issue of material fact as to whether qualified privilege was abused. Defendants presented Beard's affidavit that he learned of plaintiff's voicemail raising his scheduling grievance and ending "So either you have an answer for me later today or tomorrow. I play war." Beard also averred that he and Moore discussed the safety of the meeting in question before moving it, and Moore averred that the meeting was moved at least partly because Beard learned of plaintiff's threatening voicemail a few days earlier. While there were some discrepancies between the affidavits of Beard and Moore, defendants presented evidence that SMG employees believed plaintiff presented a threat and

moved the meeting in light of that threat. Moreover, while neither Beard nor Moore admitted that the meeting attendees were told the meeting was moved because plaintiff was a terrorist, the evidence shows they believed plaintiff presented a threat. Accepting for summary judgment purposes that the meeting attendees were so told, they were told so by people who had a good faith belief that plaintiff presented a threat warranting moving the meeting.

¶ 42     Against this evidence, the complaint alleges that defendants called plaintiff a terrorist in front of the meeting attendees to destroy his reputation with the union representatives at the meeting. However, as stated above, a plaintiff cannot rest on the allegations of his complaint to survive a summary judgment motion but must counter facts presented by the moving party with facts of his own. *Equitable Insurance Co.*, 2022 IL App (1st) 210525, ¶ 29. The existence of plaintiff's grievance in August 2015, and plaintiff's statement "I play war," provide corroboration for Beard and Moore's good-faith belief that plaintiff presented a threat. Plaintiff's statement also gave defendants reason to make the statement about defendant. Similarly, plaintiff's averment that he did not intend the voicemail to be threatening does not disprove or refute defendants' good faith belief that plaintiff presented a threat when they moved the meeting and told the attendees that it was being moved because plaintiff was a terrorist.

¶ 43     Hence, we find plaintiff has failed to present evidence and inferences to support the claim that defendants acted in bad faith or with reckless disregard. We also find no genuine issue of material fact as to whether defendants abused the qualified privilege, and the trial court did not err in granting summary judgment in favor of defendants.

¶ 44    Because we affirm the trial court's grant of summary judgment, we need not address defendants' contention that there are two independent bases – opinion and untimeliness – for a summary judgment in favor of defendants.

¶ 45                                        III CONCLUSION

¶ 46    Accordingly, the judgment of the circuit court is affirmed.

¶ 47    Affirmed.